# EXHIBIT F

Simon R. Brown, Esq.  
Preti, Flaherty, Beliveau & Pachios, LLP  
PO Box 1318  
Concord, NH 03302-1318

December 10th, 2018

Paul Maravelias  
34 Mockingbird Hill Rd  
Windham, NH 03087

**VIA E-MAIL AND FIRST-CLASS MAIL**

    RE:    New Hampshire Rules of Professional Conduct vis-à-vis  
             Representation in <u>Christina DePamphilis v. Paul Maravelias</u>, etc.

---

Dear Attorney Brown:

    I write to remind you of certain New Hampshire Rules of Professional Conduct incumbent upon you as a practicing attorney admitted to the New Hampshire Bar. At this point in time, it is my intention solely to offer you a good-faith reminder of these rules and respectfully demand your future compliance therewith.

    I reference the following rules:

> **Rule 3.1. Meritorious Claims and Contentions**
> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. …
>
> **Rule 3.3. Candor Toward the Tribunal**
> (a) A lawyer shall not knowingly:
>     (1)  make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
>     (2)  fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
>     (3)  offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and comes to know if its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may

1

# EXHIBIT F

refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

**Rule 3.4. Fairness to Opposing Party and Counsel**

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists; …

(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused;

**Rule 4.1. Truthfulness in Statements to Others**

In the course of representing a client a lawyer shall not knowingly:

(a) make a false statement of material fact or law to a third person; or

(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

2004 ABA Model Rule Comment
RULE 4.1 TRUTHFULNESS IN STATEMENTS TO OTHERS

Misrepresentation

[1] A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements. For dishonest conduct that does not amount to a false statement or for misrepresentations by a lawyer other than in the course of representing a client, see Rule 8.4.

Statements of Fact

2

# EXHIBIT F

[2] This Rule refers to statements of fact. Whether a particular statement should be regarded as one of fact can depend on the circumstances. Under generally accepted conventions in negotiation, certain types of statements ordinarily are not taken as statements of material fact. Estimates of price or value placed on the subject of a transaction and a party's intentions as to an acceptable settlement of a claim are ordinarily in this category, and so is the existence of an undisclosed principal except where nondisclosure of the principal would constitute fraud. Lawyers should be mindful of their obligations under applicable law to avoid criminal and tortuous misrepresentation.

**Rule 8.4. Misconduct**
It is professional misconduct for a lawyer to:

> (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; …
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; … or
> (f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

---

With all due respect, some of your conduct in relation to these rules has been disturbing. Since you are an intelligent person, I need not enumerate every single instance of your conduct which would appear to violate these rules. Rather, I shall illuminate a few salient examples and entrust the identification of similar acts to your imagination.

### A. <u>Groundless, Robotic Demands for Attorney's Fees in Response to Lawful, Necessary, and Legitimate Adversarial Conduct</u>

The most recent manifestation of unprofessional conduct, doubtlessly the *sine qua non* of this letter, has been your predictable plea for punitive attorney's fees appended to nearly every response to any and all pleadings I might enter into any ongoing case. This behavior has been noted not only in the appellate cases, but also within the above-referenced Derry trial court case, <u>wherein I am not even the movant, but the defendant</u>. My pleadings are completely legitimate and necessitated by your client's bad-faith, falsification-fueled legal pursuit of me; accordingly, such requests are baseless. As I remember, the first instance of this behavior traces back to your April 2018 response to my necessary, legally meritorious, and indeed correct Motion to Dismiss and Vacate Stalking Order, on which the incompetent laughing-joke-of-a-court in Derry never ruled.

3

# **EXHIBIT F**

Most recently, you rehearsed such a petty prayer at the end of your objection to my Motion for Recusal and Reconsideration, likewise a necessary, valid motion containing high-quality argumentation, supported by a potpourri of uncontested facts, necessary to preserve fairness and integrity in these proceedings.

You are aware that such requests for attorney's fees are valid in response solely to frivolous conduct, not to weighty legal arguments necessary for the defense of my basic rights and property. Given the tyrannical acts of injustice the rogue Judge Coughlin will evidently do to me upon an unsupported accusation of "bad-faith" conduct, I interpret your routinely unsuccessful prayers for undue fees in this case as coercive threats against my financial property. I refuse to cower to such threats which have as their object that I should surrender my legal self-defense, allowing your client to traduce my good name and assault my constitutional rights without opposition.

Abetting the pursuit of false, vindictive "stalking" restraining order litigation against an innocent young man and then treating said defendant's attempts at legal self-defense as automatic "frivolous" behavior is gaslighting, not permissible attorney conduct. It is without any legitimate purpose and is a continuation of the familiar gaslighting tactics waged against me by your client. It differs from professional attorney conduct. In the latter, a lawyer focuses on contesting the legal arguments proposed in the opponent's pleadings. If you disagree with my reasoned legal arguments, I welcome you to challenge them in your responsive pleadings.

By authority of Professional Conduct Rule 3.1, **demand, thus, is made that you cease and desist** including such prayers for such relief in your pleadings, themselves frivolous, unless made in response to truly "frivolous" conduct (*e.g.*, conduct wherein the opposing party petitions the Court to grant relief for which there is no arguable basis in the law). In contrast to frivolous conduct, I exactingly cite the legal authorities by which I am entitled to the requested relief in all my pleadings entered in either Court.

### B. Willful and/or Negligent Mischaracterizations of Fact

Repeating your client's testimony favorable to your position and falsely representing the record are distinct practices. Moreover, repeating assertions later proven by tangible evidence to have been complete falsehoods constitutes misconduct for two separate reasons: 1) because the underlying representation comes to be known by you to be false, and 2) because it abets in the continued commission of a crime (see RSA 641:1, 641:2, 641:3, and 173-B:3, IV.)

As a generic warning, Rules 3.3, 3.4, and 4.1 prohibit you from composing shockingly partisan, incomplete, and frequently outright-dishonest Statement of Facts sections, such as those found in both of your opposing briefs in the two appellate cases. Nearly every sentence you have

4

# EXHIBIT F

written in such sections presents a fact which I directly contradict somewhere in the record, though you persistently neglect to present the opposing testimony. You have even asserted unsupported facts within the questions-presented and argument headings of your briefs. Worse, at times, my contradictions have taken the form of incontrovertible physical evidence seen and understood by you. These examples would be the most likely to land you in hot water.

In general, I would refer you to the following excerpt from *A Guide to Appellate Advocacy in New Hampshire* (Lisa Wolford, Esq. & Stephanie Hausman, Esq., 2014):

> "It is not wise, however, to omit facts that are relevant but not helpful to your case, because your opponent will invariably expose the omission. Similarly, it will not help your case to mischaracterize or misstate the facts by presenting them in a manner that unfairly favors your case or unfairly disfavors your opponent's. To do so compromises your credibility before the Court."

I offer a few specific examples, starting with the lie about your client's female child feeling "scared" at a party at my house 5 years ago. Let us assume you believed the accusation from the 2016 stalking petition and had a reasonable good-faith belief that it was true. At the 5/3/18 Hearing, precisely at 1:25:48 in the recording (https://youtu.be/ErHhybEI_3w?t=5145), upon your initial seeing my casual photograph from that same party, you witnessed the laughable spectacle of how vastly contrary reality actually is compared to your client's delusional and/or perjurious representations thereof.

You made a smiling, laughing, tongue-in-cheek expression upon discovering yet another indication of your clients' rabid falsity, as if such revelations have become frequent sources of entertainment for you, doubtlessly similar to unseen reactions you must have had to the Turkey Trot video, to my parents' letters revealing the exculpatory content of my audio recording, to images of your client's female daughter's wild/licentious/intemperate behaviours, or to the June 2017 middle-fingers menagerie, *inter alia*. During cross, you attempted to twist my self-defensive exposition of your client's perjury somehow to your advantage by insinuating I was "secretly taking photos" of your then "12-year-old" client. But the record reflects I contradicted this, stating, "Without her knowledge? I had the camera right there. She can see that I'm take – snapping pictures around my [own summer family] party [at my house]." (T449)

Despite knowing of the falsity of the underlying accusation, and despite knowing that the photo was not "secret" or "surreptitious", you went ahead and called it just that on Page 9 of your opposing brief.

Similar characterizations repeating the now-documented perjury that I "approached" David's female child at the 2013 Turkey Trot, "made her scared", and "wanted to walk with her" are dangerous acts of misconduct for you, since you watched the video and observed the incontrovertible proof of your clients' extreme falsity, in that instance even ten-times more

5

# EXHIBIT F

severe than the 2013 party lie.[1] Repeating the audio-recording-documented falsehood that "Maravelias told her he would return when she was 18" on Page 10 of your brief, even when your client admitted that I did not say those "direct" words (T95), and when I testified multiple times to never saying this, is treading on thin ice.

At times, your false representations of fact wander into such territory of indefensible exaggeration or distance from even the words of your own client that you open yourself to civil defamation liability beyond the scope of the Professional Rules of Conduct. Examples include "recruited his sister" (Page 9), insinuating the heretofore-unseen delusion that there was "mediation" (Page 10) between my parents and your client in 2016 after your client's female child attended another party at my house, claiming-anew that there "had been no recent contact [prior to 12/12/16]" (Page 10, *see* T276), attributing to me, baselessly, the attachment of "social media posts" to a letter I did not write (Page 40), claiming that I "made or possessed recordings of [David's female child] without her knowledge since she was 12 years old" (*Id.*) (a reference to my sister taking a video on her cell-phone of an outdoor sporting event), etc.

This conduct does not reflect upon the integrity of your profession, nor the diligence expected by the Bar Association of all its practicing attorneys. The misrepresentation-conduct mentioned above is merely the tip of an iceberg that is doubtlessly violative of the rules I have cited.

You may in some cases retort, and it might possibly be, that honest human error caused prejudicial misrepresentations which you objectively would have known were false, such as inverting the temporal order of my 12/8/17 stalking petition against David DePamphilis and my 12/15/17 false, annulled arrest in the third paragraph of your 3/27/18 trial court pleading replying to my objection, or telling the court first that you heard about my recording motion "five minutes ago" (T6:9, in Maravelias v. DePamphilis), at "8:01am" that day (T12:9), then shortly thereafter admitting that you were given telephonic notice the prior day (T12:11), where the timeliness of notice was a material issue. Instances like these might actually concern honest human errors on your part, although, combined with the larger portion of misrepresentation conduct which is doubtlessly negligent and reckless, they are not helpful for you.

### C. Unhinged Inventions of Baseless Calumnies Not Even Alleged by Your Client

As far as I can remember, your client's female child has never been my "family or household member", nor my "current or former sexual or intimate partner" (thank God). I do not

---

[1] You even claimed the video "depicted only the face of Maravelias's sister" (Page 10), when the Supreme Court was given the video and can see for themselves that both the face of your client's female child and myself appear in the video.

# EXHIBIT F

recall anyone ever accusing me of "abuse" or bringing an RSA 173-B Domestic Violence restraining order petition against me.

Despite this, you have persisted in libelous, patently unreasonable conduct, quoting RSA 173-B:5, I. on Page 41 of your opposing brief in a deceptive attempt to fool the Supreme Court into equating putative acts of my third-party speech exposing your client's female child's documented criminal, harassing, and bullying behavior against me with "abuse" of her. This cowardly absurdism violates Professional Conduct Rules 3.1 and 3.3, and likely others. Your misconduct is willful and reckless, as you had already libelously accused me of "abuse" in your 7/2/18 *Motion to Criminalize Paul Maravelias Possessing a Computer Screenshot of My Client Middle Fingering Him with Her 21 Year Old Boyfriend After She Lied About Having 'Fear' and Got a False Stalking Order Against Him*, and I had already corrected your, at best, groundless legal error in my 7/5/18 objection (A164) by the time you renewed this libel months later on 11/21/18.

Even the "abuse" antics and the estopped, self-contradicting "obsession" sophistries do not, of course, exceed in severity of misconduct the good old "likely sexual assaulter" dirt from last year – an accusation likewise alleged nowhere in the record even by your expert slanderer client, nor by his female child. I will not forget Mr. Samdperil's outraged reaction to this pathetic vituperation of yours against my august personal dignity. Indeed, two years have not elapsed since this shameful act of unsupported misrepresentation somehow found its way into a legal document bearing your signature, and, thus, bearing your entire professional reputation, itself in-the-works for longer than I have been alive.

---

When are you not straining compliance with these rules, it is a true pleasure to litigate with you. I am a great admirer of your courtroom personality. I have reciprocated your (outside-of-legal-content) interpersonal gentility far more than your hurtful slander would warrant. I imagine you have been increasingly frustrated throughout the course of representing David DePamphilis and his female child in his legal pursuit of me. In fairness, your noticeable frustration is quite understandable, given their subsequent reckless behaviors and now-documented falsity, of which you could have had little knowledge in Spring 2017. I sympathize that they have made your job quite difficult. I encourage you, however, not to permit this understandable, noticeable frustration of yours negatively affect the professionalism of your conduct.

Kind regards,
Paul J. Maravelias

7