# EXHIBIT G

THE STATE OF NEW HAMPSHIRE

SUPREME COURT

NO. 2018-0483

CHRISTINA DEPAMPHILIS

V.

PAUL MARAVELIAS

## APPELLANT'S MOTION FOR RECONSIDERATION

Defendant-Appellant Paul Maravelias respectfully submits the within Motion for Reconsideration pursuant to Rule 22 and represents as follows:

1. Supreme Court Rule 22(2) states: "The [motion for reconsideration] shall state with particularity the points of law or fact that … the court has overlooked or misapprehended and shall contain such argument in support of the motion …" The Court's 1/16/19 Order overlooked and/or misapprehended the following points of fact and law.[1]

**A. While Unctuously Blandishing the Trial Court's Libel that Maravelias Caused "Reasonable Fear", This Court Willfully Ignored and Did Not Once Mention Maravelias's Primary Defense that Fearless Christina DePamphilis Incitatively Cyber-Bullied Maravelias on her Public Social Media with Vulgar Middle-Finger Gestures, With Her Boyfriend**

---

[1] Maravelias does not take it personally that this Court injuriously libels him. Given this Court's other shocking ruling in 2018-0376, affirming a punitive fees award against Maravelias claiming "the record supported" he acted "in bad faith" but without making one single citation to any such a part of the record, Maravelias understands his mere existence as a competent non-lawyer party aggravates this Court. Maravelias regrets he irks this Court's noted ideological feminist objectives as reviewed in this document. Nor could Maravelias note Judge Coughlin's misconduct through objective factual analysis without offending the old-boys'-club of bar-admitted judges and attorneys of which Maravelias is not a member.

1

# EXHIBIT G

2. In its current form, this Court's Order signals the New Hampshire public to the following alarming reality of our judiciary system:

  a. A female can come to court and file a "stalking petition" against a guy who asked her out to dinner two-weeks prior (Maravelias), and never spoke to her again thereafter. (T27,28,35-36,451:17-18)

  b. After complaining of "fear" and obtaining a Final Order, she can publicly bully her alleged "stalker" with jealousy-inducing provocations from her boyfriend on social media (A13), and two days later – failing to elicit any restraining order violation – up-the-ante with an insulting, vulgar middle-finger taunting post showing her father approving of her boyfriend. (A11;Brief21,22)

  c. The female can then extend the protective order another year, even though the alleged "stalker" never once violated the "protective" order, and despite his vociferous pleadings about her fearless bullying him – indicative of malicious legal abuse, but not of any legitimate need for "protection".

  d. Then, the alleged "stalker" can appeal the extension by himself, *pro se*, writing a Brief containing the following giant heading intentionally placed into the Brief's high-visibility positional limelight:

  **"WHERE CHRISTINA DEPAMPHILIS INCITATIVELY BULLIED PAUL MARAVELIAS ON HER SOCIAL MEDIA AFTER LAUGHIBLY LYING ABOUT HAVING 'FEAR' OF HIM, EVIDENCE SUPPORTING THE TRIAL COURT'S FINDING OF 'REASONABLE FEAR' WAS INSUFFICIENT"**

  e. Then, the New Hampshire Supreme Court <u>will completely ignore and not even mention Plaintiff's outrageous, bad-faith behavior anywhere at all in its Order rejecting Defendant's argument of abuse of discretion.</u>

2

# EXHIBIT G

3. Perhaps this Court is comfortable disclosing its current misandrist *modus operandi* to the public in such a conspicuous fashion. However, Maravelias respectfully urges the Court to reconsider its 1/16/19 Order which overlooked the end-all-be-all facts of Christina DePamphilis's public vulgar harassment of Maravelias, showing 1) she does not, nor ever did, have any "fear" of Maravelias, and that 2) there was zero evidentiary support sustaining the trial court's finding of "good cause" to extend a "protective" order which DePamphilis baited Maravelias to violate, satisfying the legal standard for reversal.

4. Christina DePamphilis, as if subject to some sort of Jezebelian demonic possession, committed inexplicable cruelty against Maravelias in her provocative social media bullying of him, silent-months after he respectfully invited her to dinner, was rejected, and never spoke to her again, and then was branded a "stalker" based on disproven lies. Her conduct was intentionally directed to Maravelias (T74,76) and guaranteed to reach him by commonality of Windham acquaintances/family members regularly viewing said public social media sites.

**B. This Court Tries to Have it Both Ways While Noting in 2018-0376 that David DePamphilis Did not Personally "Post" the Vulgar, Incitative Bullying Post Because His "Daughter" Did, but Then Completely Omitting Any and All Mention Thereof in Its Obligatory Screw-Maravelias Order Here, Where Said Conduct Was Even More Legally Significant in This Case**

5. Maravelias and the public understand that, as a legal attribute of appellate review, the Supreme Court "view[s] the evidence in the light most favorable to the plaintiff". Fisher v. Minichiello, 155 N.H. 188, 190 (2007). But the Court routinely presents an objective summary of the facts/evidence of the case in its Orders before engaging legal analysis ("viewing") thereof.

6. In its 1/16/19 Order, the Court attacks Maravelias with three-and-a-half pages (p. 3-7) of one-sided factual rehearsals dramatically slanted to disparage Maravelias and, at times, outright mischaracterizes the record (*See infra*), while never mentioning once – not

3

# EXHIBIT G

a single time – Maravelias's admitted evidence/facts favorable to his legal positions[2], chief among them Christina DePamphilis's reckless incitative harassment and bullying.

7. In its Final Order in <u>Paul Maravelias v. David DePamphilis</u> (2018-0376), the Court noted that "[DePamphilis's] daughter posted a photograph ... making an obscene hand gesture and captioned it ... [as to] reference to [Maravelias] ... the defendant's daughter, and not the defendant posted the photo and caption".

8. The public inevitably notes the following. In one appeal involving the parties, this Court insulated lawyer-represented David DePamphilis by blaming *his daughter alone* for the act, apparently exculpating David of his participation. But in the other related appeal, this Court adopts the perennial feminist tactic of simply ignoring facts which hurt one's feelings, not even mentioning the said facts anywhere, even as these facts were more essential to Maravelias's appeal in *this* case.

9. Having nervously skirted the giant elephant in the room – Christina DePamphilis's wild harassment of Maravelias, not the reverse – the Court later reminds in its Order that nobody "has [a] First Amendment right to inflict unwanted and harassing contact on another person" while rejecting Maravelias's as-applied constitutional challenge. <u>State v. Mott</u>, 692 A.2d 360, 365 (Vt.1997). The Court legally errs to rhetorically crucify Maravelias for "aiding in the composition" of a nasty letter <u>not</u> sent to the Plaintiff (itself a vast "exaggeration" of his involvement, *See* T401-403), and for his stern response to Attorney Brown's outrageous legal threat – also <u>not</u> to the Plaintiff – <u>while simultaneously failing to hold the female Plaintiff accountable whatsoever for her brazen acts of "unwanted and harassing contact" pointedly directed against Maravelias, by omitting even the slightest mention of her conduct</u>.

10. Maravelias is content if this Court chooses not to revise its Order, and accordingly renders all-the-more facile Maravelias's efforts for the New Hampshire public to expose

---

[2] This Court's Order does partially address Maravelias's *abstract legal arguments*, but totally ignores all his supremely relevant facts and arguments pertaining to Christina DePamphilis's malicious conduct, documented falsity, and self-portrayed lawbreaking, as detailed *infra*.

4

# EXHIBIT G

its highest court's present ideological *modus operandi*. However, Maravelias respectfully urges the Court to reconsider.

### C. Page 8 of the Court's Order, the Logical Crux of its Affirmation, Makes Gaping Legal Errors and Gigantic Jumps of Reasoning Which Do Not Follow

<u>*The "Sole Purpose" Finding*</u>

11. With all due respect to The Honorable Court, the central legal argument of its Order makes no sense. All aspects of the Court's affirmation are logically predicated upon its principal finding: "Based upon this course of conduct, the trial court reasonably found that the defendant's 'sole purpose' in writing, or aiding in writing, the letters and email was to further stalk and harass the plaintiff."

12. This finding is factually unsupportable, legally erroneous, and logically defective:

   a. The "purposes" of Maravelias 1) private-email-to-close-mentor and 2) solicited response to a legal threat letter are <u>implicitly self-defensive, valid "purposes" of 1) reporting misconduct while protecting one's reputation to esteemed mentors (T419,421-422) and 2) deterring a lawsuit, respectively</u>.

   b. Assuming it were logically possible to additionally impute a purpose of "stalking and harassment" to said honorable communications, it would surpass insanity to uphold Judge Coughlin's amplified verbal posturing that those were the "*sole* purposes", as if 1) edifying one's close mentor about a believed-criminal in her honor society and 2) responding to a legal threat letter to deter litigation are not themselves "purposes", regardless of whether or not they are "legitimate" purposes.

   c. Further, the record indicates it is impossible to impute *any* "purpose" of "stalking and harassment" beyond the communications' patently legitimate purpose(s), since Maravelias had no intention nor expectation that plaintiff would ever discover said communications (T406-407,422); he even

5

# EXHIBIT G

explicitly demanded confidentiality in his private email (A92). The March 2017 letter's author did similarly (A79), regardless of the weak extent of Maravelias's collaboration with her.

13. Declining to correct this Court's "sole-purpose" finding – a necessary foundation to all its subsequent affirmation-reasoning – would titillate the New Hampshire public to know their high-court esteems the act of sending a private email to one's mentor warning of subordinate misconduct constitutes an unlawful "sole purpose of stalking and harassing" said uncontacted female malefactor, whose underage drinking conduct – *at the very least* – is manifest in one of Maravelias's admitted-though-ignored exhibits[3] (A18;T371,372).

14. <u>There is no distinguishing factor here which would not apply this Court's same conclusion to *any* email – private or public – sent by anyone to any supervisor complaining of *any* subordinate's unlawful misconduct</u>, even when accompanied by attached evidentiary corroboration as in Maravelias's email. Even reporting a crime to the police could be an act of "stalking". Maravelias being subject to a stalking order is *not* a distinguishing factor since, if his private email itself is inherently "stalking" as this Court's Order suggests, then any similar person sending such an email would commit a crime or, at least, an act auspicious to the issuance of a civil protective order. Inflamed into rare-form by its personal distaste for Maravelias, this Court would set precedent impossibly contumelious towards the cherished First Amendment rights of all citizens.

15. The Court cites <u>State v. Craig</u>, 167 N.H. (2015), a case which asserts this Court's Order here is erroneous. As this Court paraphrased, the <u>Craig</u> court established "circumstances in which [defendant knows] the [plaintiff] is likely to view the

---

[3] This Court's Order even uses terms like Christina DePamphilis's "alleged" [alcohol consumption] "alleged" sexual relationship, or "alleged" perjury to evade irrefutable facts attested in the record. *But see* T60,364,370-372,418,450;A18,84; T421:18,A167-196; T275:25;A21,24,28,159,189,192,201,221. This overtly partisan judicial conduct is why the public has little lasting faith in our judiciary.

6

statements" are required for certain categories of order-violative, and thus constitutionally unprotected, "indirect" communication.

16. Paragraph 12(c) *supra* is repeated. Maravelias's private, legitimate communications could not have been "indirect communications", because he never knew nor intended that Plaintiff would view them. *See also* T471-473.

### *The "Reasonable Fear for Personal Safety" Finding*

17. This Court next invites the public to believe any reasonable person could find that said response letter and private email represent "reasonable basis to fear for [plaintiff's] personal safety", and that "without a protective order, the plaintiff's safety and well-being would be in jeopardy". Hereunder, let it be hypothetically granted that Maravelias's private communications were, impossibly, for the "sole purpose of stalking and harassing" someone who was not the recipient thereof.

18. This Court does not cite any legal authority or supporting factual basis for its strange reasoning (*e.g.*, if Maravelias had made *threatening* communications to a third-party, then that might support such a finding). Rather, to make the logical jump between A (Maravelias's self-defensive private speech to third-parties) and B (physical danger to the female plaintiff), this Court offers the following threadbare sentence: "Moreover, in view of the fact that the defendant engaged in this conduct while already subject to a court order specifically restraining him from stalking or abusing the plaintiff or members of her family, the trial court's finding [about reasonable fear for personal safety] is likewise reasonable".

19. The Court's dispositive reasoning here must equivalently assert, incorrectly, that any and all conduct violating any stalking order also amounts to causing reasonable fear for the plaintiff's safety. "Abuse", defined in RSA 173-B as family-or-intimate-partner-acts only, cannot apply here. Therefore, the only contingent requirement in this Court's logic for conduct creating "fear for personal safety" is that there be stalking-order-violative "stalking". **"Stalking" is *already defined* as conduct placing a reasonable**

7

**person in fear for their physical safety *or* criminally violating any protective order, so this Court's logic for affirming the "reasonable fear" finding is defective circular reasoning, even if wrongly assuming Maravelias actually did violate the Order by writing private, non-threatening communications to recipients wholly separate from the Plaintiff.**

20. If this Court were correct, then RSA 633:3-a I.(c) (adding <u>all</u> protective order violations to the definition of "stalking", not requiring that said violations induce reasonable fear) would not exist, because RSA 633:3-a I.(a) would already capture any course of conduct causing someone "to fear for [their] personal safety", whether committed in violation of an extant Order or not.

21. In other words, according to this Court's flawed reasoning, if Maravelias outright violated the stalking order by texting the plaintiff, "I hope you have a nice day, and sorry about all the legal trouble", such a stalking-order-violation would *also* amount to creating "fear for her personal safety and that of her family members". No intellectually honest Court could possibly entertain such an absurd notion.

### D. The Court's Rejection of Maravelias's As-Applied Constitutional Challenge Relies on Inapposite Case Law and is Tainted by Legal Error

22. Predicated upon the false "sole-purpose" finding discussed *supra*, this Court legally erred in finding Maravelias's speech-acts lacked constitutional protection.

23. The Court first cites <u>Heffron</u> in support, a foreign-jurisdiction case under very different laws, which holds "posts ... directed at a person protected by a protective order ... were not constitutionally protected". <u>Nowhere in the record was Maravelias accused of "directing" his cited communications to the Plaintiff.</u>

24. The Court then cites another foreign-jurisdiction case, <u>Childs</u>, where a man was labeled a "stalker" of his son's mother because he asked the police to check on the well-being of his own son. He'd formerly been found to have "abused" the woman. <u>This case</u>

# EXHIBIT G

is totally inapposite, as Maravelias isn't subject to any DV order nor sought any "well-being checks".

### E. The Court Does Not Anywhere Address the Orwellian Extended Terms Issue, On Which Maravelias Sufficiently Presented Extensive Argument

25. *See* A156-177,182-196;Brief54-57.

### F. Without Correcting Its Order, the Court Renders the Specific Due-Process Requirements of Dist. Div. R. 1.4(f) Protecting Public's Right to Access Courts a Mere Thing of Wax if Dist. Div. R. 1.1 Can Authorize Illegal Discretionary Restrictions

26. The Court's Order disparages the controlling law at Rule 1.4(e), "no court or justice shall establish notice rules, requirements or procedures that are different than those established by this rule", and the three-step process at Rule 1.4(f) then necessitating "any order prohibiting or imposing restrictions beyond the terms of this rule upon the photographing, recording or broadcasting of a court proceeding that is open to the public shall be supported by particularized findings of fact that demonstrate the necessity of the court's action" – both which Judge Coughlin violated.

27. This Court's suggestion that the trial court could apply Dist. Div. R. 1.1 to evade the specific requirements – which it didn't - is logically synonymous with finding trial courts may sustainably violate any party's legal rights should they so whim upon any allegation of "good cause".

### G. The Court Overlooks and Mentions Nowhere a Near-Totality of Maravelias's Evidence and Facts, Wildly Mischaracterizing the Record in Spots by Claiming Maravelias Testified to Things He Never Did

28. The Court commits tortious libel to claim Maravelias "admitted to using login credentials of other persons to gain access to the plaintiff's social media accounts and take 'screenshots' from them". Perhaps this mischaracterization of the record was an honest mistake; regardless, Maravelias politely demands it be corrected.

9

# EXHIBIT G

29. At T359, Maravelias explained <u>other people supportively supplied him social media images documenting Christina DePamphilis's unlawful substance usage, they using their own "login credentials", he then physically effectuating the "screenshots" in their presence.</u> Nowhere does the record indicate Maravelias obtained his supporters' "login credentials" and used them to gain access to accounts not his, as this Court's Order invents while striving to malign Maravelias.

30. Beyond this and other aforementioned striking omissions, the Court:

   a. Overlooked and mentioned-nowhere Christina DePamphilis's falsity in lying about the 2013 Turkey Trot incident as exposed by the content of the casual incidental video Maravelias's sister was taking (*See* Brief24,25);

   b. Overlooked and mentioned-nowhere Christina DePamphilis's lies or self-contradictions under oath when questioned about her cyber-bullying Maravelias (*See* Brief24);

   c. Overlooked and mentioned-nowhere Christina DePamphilis's admissions of having falsely put words in Maravelias's mouth in the petition (*See* A187;T377-379);

   d. Overlooked and mentioned-nowhere Christina DePamphilis's underage alcohol consumption further validating Maravelias's email and occasional jibes against his legal abuser while testifying – "justified, merited, and appropriate" (T411) insults against an unrepentant criminal falsifier, for which Maravelias firmly offers zero apology (*See* A18);

   e. Overlooked and mentioned-nowhere Christina DePamphilis's severe neurotic/delusional accusatory propensities and vivid false memories (*See* Brief25,26);

# EXHIBIT G

    f. Overlooked and mentioned-nowhere that Judge Coughlin irrefutably contradicted himself and composed a disingenuous order (*See* Brief49-50); and

    g. Overlooked and mentioned-nowhere that on 5/2/18, when Maravelias wrongly believed he'd won and had his freedom back, he didn't use his liberty in any way contrary to the restraining order's spirit, and went for a peaceful recreational walk, able to finally focus on other matters and move-on in life (*See* Brief49;T357:2-5,303:17-22,475).

WHEREFORE, for the reasons hereinabove set forth, Defendant-Appellant Paul Maravelias respectfully requests this Holy Feminist Court:

1) Grant this Motion;
2) Upon reconsideration of its 1/16/19 Order, grant Maravelias the relief requested in his Brief, namely:
    a. Reverse the trial court's 6/15/18 extension order and 8/7/18 order, ending this case; and
    b. Retroactively annul the original stalking order dated 2/7/17, issuing declaratory relief that it was error to find Paul Maravelias had ever stalked the daughter of David DePamphilis.

Respectfully submitted,

PAUL J. MARAVELIAS,
*in propria persona*

Dated: January 28th, 2019