PAUL J. MARAVELIAS, *pro se*
34 Mockingbird Hill Rd
Windham, NH 03087
Telephone: (603) 475-3305
Email: paul@paulmarv.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PAUL MARAVELIAS,<br>　　a natural person,<br><br>　　　　*Plaintiff,*<br><br>　　v.<br><br>SUPREME COURT OF<br>NEW HAMPSHIRE,<br>　　a governmental entity in the State of New<br>　　Hampshire,<br><br>ROBERT J. LYNN,<br>　　a natural person, in his individual and<br>　　official capacities as Chief Justice of the<br>　　Supreme Court of New Hampshire,<br><br>　　　　*Defendants.* | Civil No. 1:19-CV-00487(JL)<br><br>Date Action Filed: 5/6/19<br><br>**JURY TRIAL DEMANDED**<br><br><br><br>**FIRST AMENDED<br>VERIFIED COMPLAINT FOR<br>EQUITABLE RELIEF AND<br>COMPENSATORY DAMAGES** |

## PRELIMINARY STATEMENT

1.　　　　NOW COMES Paul Maravelias ("Plaintiff") with Complaint and seeks redress for Defendants' extortionate floccinaucinihilipilification of a citizen's basic civil right to file an appeal in New Hampshire's only appellate court. Defendants have promulgated their unconstitutional "Supreme Court Rule 23" and fraudulently usurped it as an unlawful excuse to command *pro se* 23-year-old Maravelias to pay $4,900.00 to a prevailing party – simply for bringing an appeal, Maravelias's first appearance ever in the NH Supreme Court. Despite accepting, hearing, and adjudicating said appeal on its full merits in 2018, Defendants now

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

target Maravelias in a bad-faith campaign of retaliatory harassment and intimidation, newly

implying – without specifically finding – that the appeal had been "frivolous or in bad faith".

2.      This is a civil rights action brought under 42 U.S.C. §1983 and federal question

jurisdiction to redress Defendants' specific conduct and challenge the generic constitutionality

of N.H. Sup. Ct. R. 23. Defendants underhandedly conspired with Maravelias's rich 50-year-

old lawyer-represented opponent in the appeal to commandeer a limited request for attorney's

fees (in connection with one single motion) and furtively twist the said into a coercive

bludgeon forcing Maravelias to pay his opponent's whole bill for the entire litigation.

Defendants are weaponizing "Rule 23" as an indiscriminate vessel of oppressive pecuniary

chastisement in wanton nonobservance of Maravelias's constitutional due process rights.

3.      Maravelias initiated the appeal to Defendants when a local NH judge made-up

and cited a non-existent case to award fees and costs against Maravelias, including an

erroneously itemized expense the opponent had incurred months-before Maravelias initiated

the underlying action. The local judge subsequently scribbled "denied" on Maravelias's

motion to reconsider, refusing to correct the plain accounting error. Defendants now dare to

claim Maravelias filing an appeal in such circumstances was "frivolous" and are baselessly

extorting him $4,900.00 to punish his mere attempt to not be extorted in the first place.

4.      Defendants' acts are a retaliation against Maravelias for his public critical

speech about them. Defendants' conduct is without any statutory authority and in shocking

excess of appellate jurisdiction. Acting in an enforcement capacity, Defendants now credibly

threaten to imprison impecunious Maravelias unless he surrenders $4,900.00 of his besieged

monetary property in capitulation to Defendants' arbitrary, non-judicial, legislative diktats.

**JURISDICTION AND VENUE**

5.      This action arises under 42 U.S.C. § 1983 and the United States Constitution. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1343 in that the instant case arises under questions of federal constitutional law.

6.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). Personal jurisdiction exists whereas all parties are entities or natural citizens within the federal boundaries of the United States of America.

7.      Claims herein for injunctive relief are authorized pursuant to 28 U.S.C. § 1343 and Rule 65 of the Federal Rules of Civil Procedure. Claims herein for declaratory relief are authorized pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

8.      Venue is appropriate per 28 U.S.C. § 1391 as Defendants' material conduct has been and is occurring within the State of New Hampshire, where all individual parties reside.

**PARTIES**

9.      Plaintiff PAUL MARAVELIAS is a natural person residing in the Town of Windham in the State of New Hampshire. He is a 23-year-old Dartmouth College graduate in Economics currently employed as a software engineer. He resides with his parents and sister at 34 Mockingbird Hill Road, Windham, NH 03087.

10.      Defendant SUPREME COURT OF NEW HAMPSHIRE is a governmental entity in the State of New Hampshire authorized by Pt. II, Art. 73-a. of the N.H. Constitution. It exists at One Charles Doe Drive, Concord, NH 03301. Its officers, agents, and employees were acting and continue to act under color of state law at all material times.

11.      Defendant ROBERT J. LYNN is the Chief Justice of the Supreme Court of New Hampshire and a resident of the Town of Windham in the State of New Hampshire. He was

and is acting under color of state law at all material times. His address is One Charles Doe

Drive, Concord, NH 03301. Pursuant to Pt. II, Art. 73-a. of the N.H. Constitution, he

"make[s] rules governing the … practice and procedure to be followed in all [state] courts",

rules which "have the force and effect of law". He is the administrative head of all New

Hampshire courts and has a duty to obey and ensure his subordinates obey the laws and

Constitution of the United States of America. Defendant ROBERT J. LYNN is being sued in

his individual and official capacities.

## FACTUAL ALLEGATIONS[1]

**Background of the Case: Maravelias Rightfully Files a Necessary Protective Order
Petition on 12/8/2017 Against David DePamphilis in NH State Courts**

12.     On 12/8/17, Maravelias filed a Stalking Petition against David DePamphilis in

Salem Circuit Court seeking a no-contact prohibition for one year. Hundreds or thousands of

such petitions are filed every year. Many of them are totally frivolous and should never be

filed. Maravelias went above-and-beyond by ensuring his meritorious petition's allegations

were not only painstakingly accurate, but also factually provable by evidence.

13.     Salem Circuit Court accepted the Stalking Petition and scheduled it for a hearing

after a same-day judicial inspection thereof. By contrast, frivolous stalking petitions are

denied on-the-spot in said preliminary judicial review and never scheduled for hearing.

---

[1] Despite the liberal notice-pleading requirements of Rule 8, robust pleading-stage factual
allegations are necessary here. First, Plaintiff alleges Defendants' fraud and/or mistake,
triggering heightened, "rigorous" Rule 9(b) pleading standards. *Davis v. Gutierrez*, 2018 DNH
063. Second, Plaintiff must allege Defendants' malice and bad faith through objective facts
rather than broad conclusory stipulations should Plaintiff pursue a preliminary injunction. Third,
Defendants' own Motion to Dismiss Original Complaint (ECF Doc #5) faults Plaintiff for lack of
developed legal argumentation therein. *See Id.* at ¶8. Defendants contended Plaintiff's
"conclusory argument to the contrary is not entitled to the assumption of truth" before he had any
opportunity to develop his arguments with further discovery-obtained factual basis. *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

14.      David DePamphilis is an affluent 50-year-old Executive Vice President (VP) and Chief Operating Officer (COO) at a multinational leasing company, NFS Leasing, Inc. Paul Maravelias was an unmarried 22-year-old software programmer living with his family.

15.      Maravelias's restraining order petition alleged DePamphilis had made threatening phone calls "screaming like a madman" to Maravelias and his father Theodore in December 2016. The petition alleged DePamphilis used his daughter's social media to make public cyberbullying posts directed to Maravelias: to wit, that DePamphilis middle-fingered Maravelias along with his daughter's new boyfriend to incite Maravelias to an unlawful response by jealousy (Maravelias had asked-out the daughter and been romantically rejected). The petition also alleged DePamphilis indirectly sent an unwanted, threatening letter to Maravelias. Finally, Maravelias alleged his belief that DePamphilis "got in his car and went marauding after [Maravelias] in [their] neighborhood" on the night of 3/21/17.

16.      Judge John J. Coughlin presided over a February 2018 Hearing on Maravelias's petition. DePamphilis appeared lawyer-represented and moved to dismiss the case.

17.      The trial court denied the motion to dismiss, allowing Maravelias to proceed.

18.      Maravelias provided ample evidentiary support for his allegations. He 1) produced DePamphilis's harassing "middle-fingers" cyberbullying social media post, 2) brought his father to testify to DePamphilis's threatening, profane phone-calls, and, *inter alia*, 3) submitted a letter DePamphilis himself wrote wherein DePamphilis admitted to getting in his vehicle to look for Maravelias on 3/21/17, the proper interpretation of which was disputed.

19.      Judge Coughlin later denied the Stalking Petition with a stunning reality-disowning finding that Maravelias provided "no credible evidence" to support his allegations.

The record however indicates DePamphilis contested little-to-none of manifold accepted "evidence" Maravelias submitted to the same judge – solely the *legal import* thereof.

20.     Judge John J. Coughlin is the same state judicial officer currently being sued in the 42 U.S.C. § 1983 lawsuit *Maravelias v. Coughlin et al.* (1:19-CV-00143) for acts taken in a separate Maravelias-DePamphilis dispute. It is Plaintiff's position that Judge Coughlin's patently unreasonable, oppressive conduct against Maravelias in favor of DePamphilis is objectively discernible through a history of acts evincing a pattern of hostile bias.

**The Lower State Court Orders Maravelias to Pay His Alleged-Stalker Over $9,000 in Costs and Attorney's Fees to Punish the Truthful, First-and-Only Petition**

21.     Ostensibly perceiving Judge Coughlin's typhlotic favoritism, DePamphilis's attorney filed a "Motion for Award of Attorney's Fees" on 3/8/18. This included an affidavit itemizing legal expenses, requesting a total of $9,029.51 in fees and costs.

22.     One of the itemized costs was dated "10/25/2017", months before Maravelias ever even initiated his restraining order petition against DePamphilis on 12/8/2017.

23.     After Maravelias's Objection and Reply, Judge John J. Coughlin granted DePamphilis's attorney's fees motion on 5/11/18, finding Maravelias's stalking petition was "in bad faith" and that Maravelias's "positions were patently unreasonable".

24.     Legally, "patently unreasonable" means "even if true, giving rise to relief in no possible set of circumstances". The same local court has subsequently granted protective orders based off the very same theories Judge Coughlin called "patently unreasonable".

25.     Judge Coughlin did not make a single specific factual finding explaining how Maravelias's petition was "in bad faith". Judge Coughlin repeated the reality-disowning comment that Maravelias "did not provide any credible evidence of the allegations as set forth in the Petition" – as if an uncontested full color screenshot of David DePamphilis middle-

fingering and cyberbullying Maravelias on his daughter's social media (which Judge

Coughlin admitted as evidence) was not "credible evidence" of said allegation.

**The Lower State Court Dreams-Up and Cites a Non-Existent Law Case, and Later Refuses to Correct Its Erroneous Order**

26.     Judge Coughlin cited "Harkeem v. NH Dept of Employment Security, 117 N.H. 687 (1977)" as support for the attorney's fees award. <u>Embarrassingly, there is no such case in existence</u>. Upon information and belief, Judge Coughlin took two cases and portmanteaued the plaintiff of one with the defendant of another to contrive this non-existent fantasy case.

27.     Maravelias filed a Motion for Reconsideration on 5/21/18. Besides legal argument on the illegality of the attorney's fees award, Maravelias objected that Judge Coughlin incorrectly ordered payment including DePamphilis's erroneously itemized "10/25/17" expense from months before Maravelias even initiated the case.

28.     Judge John J. Coughlin totally ignored Maravelias's arguments and scribbled "denied" on the Motion for Reconsideration, failing to give any further specific explanation.

29.     Faced with Judge Coughlin's reckless, fact-amnestic, and patently unreasonable conduct, Maravelias intended to appeal the order to undo the wrongful plunder of his money.

**After Consulting with His Lawyer, Maravelias Appeals the Unexplainable Attorney's Fees Award to the New Hampshire Supreme Court**

30.     Any reasonable person in Maravelias's circumstance would file an appeal.

31.     Maravelias consulted with his attorney retained in a separate matter, Richard E. Samdperil, Esq., about Judge Coughlin's shocking fee award. Attorney Samdperil thought an appeal would have considerable likelihood of success and opined that a *de facto* "one-bite" rule makes a punitive fee award quite bizarre on the first-and-only action a litigant ever took.

32.     On 7/2/18, Maravelias filed a Rule 7 Notice Mandatory of Appeal with Defendants. Maravelias's appeal challenged both the fee award and the denial of the stalking petition. Defendants chose to accept and docket the appeal as Case No. <u>2018-0376</u>.

33.     Maravelias personally knew his stalking petition was not "in bad faith" nor was "patently unreasonable". Maravelias was certain he would win the appeal.

**Defendants Affirm the Underlying Attorney's Fees Award in a Secret "Final Order" Mysteriously Redacted from Their Public Website Listing All Other Final Orders**

34.     After full briefing on both sides, Defendants fully adjudicated and resolved said appeal in a Final Order dated 11/30/18, attached as **Exhibit A**.

35.     After devoting multiple pages of discussion to affirm the stalking petition denial, Defendants affirmed the punitive fees award merely with the following rushed, bald assertion:

> "To the extent that the plaintiff argues that he did not act in bad faith, based upon our review of the record, we conclude that the trial court's determination is supported by the evidence and not legally erroneous".

36.     Defendants neglected to cite any such supporting part of the "record".

37.     Defendants' Final Order acknowledged the indisputably erroneous 10/25/17 expense and noted that DePamphilis waived it in his Opposing Brief. Therefore, the excessive original monetary amount of the award was corrected <u>only because Maravelias brought an appeal to Defendants</u>.

38.     Defendants' Final Order contained no indication they found Maravelias's appeal "frivolous" or "in bad-faith". Defendants frequently use a boilerplate one-page Final Order to dispose of truly "frivolous" appeals. *See e.g.*, **Exhibit B**. Defendants treated Maravelias's appeal as a meritorious, rightful appeal all the way through its final adjudication on the merits.

39.     Defendants post their "Other Final Orders" on the New Hampshire Supreme Court public website (https://www.courts.state.nh.us/supreme/finalorders/2018/index.htm). Defendants' clerk confirmed by phone the Final Orders/Opinions of all appeals fully briefed and resolved on the merits are published on said site. Defendants even appear to include the aforementioned one-page boilerplate Final Orders disposing of completely meritless appeals.

40.     Defendants have uniquely, specifically self-censored their 11/30/18 Final Order in Maravelias's appeal for inexplicable exclusion from said site. They have not uploaded nor published said routine Final Order where all such others appear. Another analogous Final Order dated 11/30/18 (2018-206) appears under "November 30" on said site.

**The Origins of the Fraudulent "Rule 23 Attorney's Fees" Extortion Conspiracy**

41.     Before the appeal was decided, both Maravelias and DePamphilis filed Motions to Strike portions of the other's brief(s). DePamphilis's such motions, as they often baselessly do, contained a robotic prayer for attorney's fees.

42.     Defendants' 11/30/18 Final Order granted in-part and denied in-part DePamphilis's 10/19/18 Motion to Strike, stating,

> "To the extent that the defendant requests attorney's fees in connection with the motion [DePamphilis's 10/19/18 Motion to Strike], the request is denied without prejudice to the defendant moving for attorney's fees pursuant to Supreme Court Rule 23".

43.     N.H. Supr. Ct. R. 23 is entitled "Taxation of Costs; Waiver; Attorney's Fees" and provides in its final part:

> "In the interest of justice in extraordinary cases, but not as a matter of right, the supreme court in its sole discretion may award attorney's fees related to an appeal to a prevailing party if the appeal is deemed by the court to have been frivolous or in bad faith."

44.     Neither Defendants' Final Order nor DePamphilis's 10/19/18 Motion to Strike ever mentioned, requested, or contemplated punitive attorney's fees against Maravelias beyond the limited scope of the one single motion. Prayer C of DePamphilis's Motion stated,

"Award Mr. Depamphilis his attorney's fees in connection with having to file the instant motion;" (**Exhibit C**) (Emphasis added)

45.     N.H. Supr. Ct. R. 25 allows a party to move to summarily dismiss an appeal at any time if it were "frivolous or in bad faith". DePamphilis never made such a motion.

46.     29 days after Defendants' Final Order, DePamphilis filed a 12/28/18 pleading in the ended case entitled "Appellee's Request for Taxation of Costs and the Award of Attorney's Fees". He sought attorney's fees 1) again in connection with filing his 10/19/18 Motion to Strike, and 2) newly in connection with filing his 10/19/18 Objection to Maravelias's Motion to Strike. DePamphilis's 12/28/18 Motion requests at Paragraph 23:

"It is submitted that the two described pleadings were frivolous and, accordingly, Mr. DePamphilis should be awarded his attorneys' fees associated with having to respond to them." (**Exhibit D**) (Emphasis added)

47.     DePamphilis's 12/28/18 pleading never requested any attorney's fees beyond attorney's fees in connection with DePamphilis two 10/19/18 pleadings. Further, only DePamphilis's 10/19/18 Motion contained a prayer for limited attorney's fees in connection with its filing. DePamphilis's 10/19/18 Objection, however, did not, waiving the claim.

48.     On 12/31/18, Maravelias filed an Objection to DePamphilis's 12/28/18 request. (**Exhibit E**) DePamphilis's request was baseless; Maravelias exposed it as riddled with factual falsity and vexatious intent. Maravelias incorporated by reference his 12/10/18 letter to DePamphilis's attorney which brought to light his rampant misrepresentation conduct, fraudulent assertions of fact, and willful mischaracterizations of the record. (**Exhibit F**)

1
2

**Defendants Play "Wait-and-See" for Almost Three Months, Then Retaliate Against Maravelias for His Motion for Reconsideration in No. <u>2018-0483</u> By Means of Punitive Extortion Masquerading as Lawful "Appeal Fees" in No. <u>2018-0376</u>**

3
4
5
6
7

49.     Maravelias had initiated a second appeal (<u>2018-0483</u>) to Defendants on 8/15/18 in relation to the separate DePamphilis-Maravelias matter. Defendants issued a Final Order in that appeal on 1/16/19. The separate <u>2018-0483</u> Maravelias-DePamphilis appeal was about 1.5 months ahead of the <u>2018-0376</u> appeal underlying this action.

8
9
10

50.     In <u>2018-0483</u>, Maravelias filed a Motion for Reconsideration on 1/28/19. (**Exhibit G**)

11
12
13
14

51.     Defendants did nothing on DePamphilis's 12/28/18 request until months later, after receiving Maravelias's stirring Motion for Reconsideration in the separate case exposing Defendants' libel and mischaracterization of fact in their 1/16/19 Final Order in <u>2018-0483</u>.

15
16

52.     Conjunctively on 2/21/19, Defendants issued two one-page Orders in both Maravelias-DePamphilis appeal cases:

17
18
19

a.   In <u>2018-0483</u> (the separate appeal), they blanket-denied Maravelias's Motion for Reconsideration with zero specific discussion. (**Exhibit H**)

20
21
22
23
24

b.   In <u>2018-0376</u> (the underlying appeal), they <u>GRANTED</u> DePamphilis's 12/28/18 request with the following explanation: "The defendants request for taxation of costs and the award of attorney's fees is granted. <u>See</u> Rule 23. … On or before March 4, 2019, the defendant shall file an itemization of the attorney's fees that he is seeking." (**Exhibit I**)

25
26
27

**Defendants Deny Maravelias a Hearing, Allow DePamphilis's 3/4/19 Itemization to Surreptitiously Metastasize to Include Fees for the *Entire* Appeal, and Deprive Maravelias of Any Opportunity to Respond**

28

53.     In response, Maravelias filed a 2/26/19 "Motion to Reconsider Anomalous, Arbitrary Rule 23 Award of Appeal Attorney's Fees". (**Exhibit J**)

54.    Directly addressing Defendants, Maravelias noted their abrogation of his constitutional rights, reiterated the meritorious and necessary nature of his appeal, and apprised them of their partisan bad-faith conduct – including, but not limited to, failing to correct their overt mischaracterizations of Maravelias's transcribed testimony in their <u>2018-0483</u> Final Order to malign Maravelias.

55.    Maravelias explicitly requested a "Hearing on this matter" in said Motion.

56.    On 3/4/19, DePamphilis, by attorney, filed a jaw-dropping "Appellee's Itemization of Attorney's Fees and related Affidavit". (**Exhibit K**)

57.    DePamphilis's itemization included **<u>every single hour his attorney worked in the entire totality of the months-long litigation from "07/05/2018" to "12/28/2018", totaling $4,900.00</u>**, even including the time the lawyer spent reading the "Supreme Court's [4-page] order denying Mr. Maravelias' appeal" and "communicat[ing] with client re: same".

58.    By contrast, DePamphilis's itemization reveals that <u>an absolute maximum of $530.00</u> in fees were connected with the filing of the two 10/19/18 pleadings for which his granted 12/28/18 request sought reimbursement.

59.    Simon R Brown, DePamphilis's attorney, submitted a sworn affidavit with the itemization indicating he intended to seek "legal fees in the amount of $4,900.00 through December 28, 2018, for 43.0 hours of billed time spent in the defense of this appeal" and that he knew these fees exceeded the limited scope of the 10/19/18 pleadings. (**Exhibit K**)

60.    Defendants received this itemization and had a duty to ensure that the total amount requested was consistent with the relief actually sought and granted.

61.    On 3/29/19, Defendants issued an Order giving rise this action, stating:

"After review, the plaintiff's motion for reconsideration of the February 21, 2019 order concerning attorney's fees is denied. The defendant is hereby awarded attorney's fees pursuant to Rule 23 in the amount of $4,900." (**Exhibit L**)

**Defendants Ignore Maravelias's Constitutional Arguments and Refuse to Make a Single Finding of Fact in Support of The Alleged "Rule 23 Award"**

62.     Defendants' 3/29/19 Order ignored or denied Maravelias's request for a hearing.

63.     Defendants' 3/29/19 Order indicates that they ignored, did not hear, or otherwise never adjudicated Maravelias's federal constitutional claims in the 2/26/19 Motion.

64.     Defendants' threadbare two-sentence 3/29/19 Order contained zero factual findings justifying their commandment that Maravelias pay his opponent $4,900.00.

65.     Defendants were aware of Maravelias's 2/26/19 written request to Defendants to "state specific facts and reasons why this appeal was allegedly 'frivolous or in bad faith'".

66.     Defendants' 3/29/19 Order deprived Maravelias an opportunity to respond to DePamphilis's 3/4/19 itemization and the amount sought.

**This Action is Properly Before This Court**

67.     Defendants will enforce their unlawful Order if Maravelias does not relinquish his monetary property. Accordingly, Defendants' violation of federal law is ongoing.

68.     Defendants cite their own Rule 23 as the legal authority for their 3/29/19 Order.

69.     On 5/1/19, DePamphilis's attorney emailed Maravelias "concerning payment of the attorney's fees ordered by the Supreme Court" demanding the "status of payment".

70.     Plaintiff lives near the Massachusetts border and heavily engages in interstate commerce on a routine basis. His employer is out-of-state.

71.     An individual can bring an action in federal court against a state's highest court in relation to its enforcement and/or promulgation of a court rule aggrieving said party. *See e.g. Supreme Court of N.H. v. Piper,* 470 U.S. 274 (1985) (New Hampshire Supreme Court Rule 42 deemed unconstitutional in violation of the Privileges and Immunities Clause). It occurs most frequently in the context of challenges to state supreme court bar admission rules.

72.     The *Rooker-Feldman* doctrine prohibits federal district courts from reviewing final state court judgments where the proceedings are of a judicial nature. The doctrine does not preclude generic facial challenges to unconstitutional court rules nor actions connected with a state court's "non-judicial" proceedings, such as if acting in a legislative or enforcement capacity. *See District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983) (allowing general attack on the constitutionality of the D.C. Bar admission rule).

73.     Defendants' 11/30/18 Final Order upholding the underlying $9,000 attorney's fees award was a "judicial proceeding". Plaintiff is not attempting to seek unavailable review thereof. He describes it here solely to narrate Defendants' pattern of bad-faith misconduct.

74.     Defendants' "judicial proceedings" ended there. In their current alleged application of Rule 23 to force Plaintiff baselessly to pay $4,900 of attorney's fees for the appeal itself, Defendants are acting in a non-judicial legislative and enforcement capacity.

75.     Defendants themselves promulgate "Rule 23", not the legislature. Defendants themselves threaten to enforce their unlawful commandment with contempt of court powers. The nature of a "judicial" function, on the other hand, is of impartial arbitration on rights and liabilities exogenously established in legislative-statutory, constitutional, and/or common law.

76.     The legal definition of a "judgment" is "the official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated and submitted to its determination."

77.     Since a "judgment" requires a both a "claim" and a "right", and since Rule 23 specifically advises such "Rule 23" fee awards are "not … a matter of right", Defendants' extortionate commandment to Plaintiff under Rule 23 is not a "final state court judgment".

78.     Defendants did not even attempt to adorn their reckless conduct with the visage of a "judicial inquiry". They made no specific findings of fact, ignored Maravelias's request for a hearing, and cited zero case law or statutes in connection with the "Rule 23" award.

79.     Rooker-Feldman does not apply to void state judgments. A judgment is void and must be vacated if (1) it is without jurisdiction or, separately, if (2) "the court that rendered the judgment acted in a manner inconsistent with due process of the law", *United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*, 55 F.3d 1311 (7th Cir. 1995), or where a "court's action amounts to a plain usurpation of power constituting a violation of due process", *U.S. v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990). *See United States use of Wilson v. Walker*, 109 U.S. 258 (1883).

80.     Defendants exceeded their appellate jurisdiction and acted as an original finder of fact. They exercised original jurisdiction over their unprecedented retaliatory act casted in the light of a "Rule 23 fee award".

81.     When issuing their unprecedented retaliatory $4,900.00 "award" on 3/29/19, Defendants acted in complete absence of their appellate jurisdiction as established in RSA 490:4, generally, as a "court of final jurisdiction of questions of law and general superintendence of inferior courts". First, the "award" pertaining to the appeal case itself had nothing to do with "correct errors and abuses" of lower courts or "general superintendence of

inferior courts". *See* RSA 490:4 (establishing Defendants' jurisdiction) <u>Second</u>, Defendants' illegal $4,900 "award" was not actually an application of Rule 23 since they made no finding the appeal was "frivolous or in bad-faith", nor did they follow the implicit due process requirements said Rule 23 must obey. <u>Third</u>, even if Defendants' act is, in fact, a proper execution of Rule 23, Defendants acted in absence of jurisdiction to delegate unto themselves a power, through a "court rule" which conflicts with the lower courts' original jurisdiction over small claims and/or general civil actions to recover damages, which the Superior Court and Circuit Courts share depending on amount pursuant to RSA 491:7; 498:1 and RSA 502-A:14 respectively.

82.     If somehow Rooker-Feldman still did prohibit federal district courts from hearing claims rooted in the tortious, unlawful acts of a state agency (an appellate court) where said conduct <u>does not include</u> the judicial decision(s) substantively resolving the actual appeal case itself on its merits, then the doctrine violates the equitable maxim that "for every wrong, there must be a remedy" (*ubi jus ibi remedium*) and a new exception to the doctrine would need to be created. The United States Supreme Court's discretionary certiorari jurisdiction over final state supreme court "judgement and decrees" (28 U.S.C. § 1257) presumes that, where a federal constitutional claim is brought under 28 U.S.C. § 1257, a higher state court has already reviewed the factual findings of the lower state court for abuse of discretion or error of law, and that the aggrieved party has already exercised some form of meaningful appellate remedy in the state courts. This would naturally be the case 99.99% percent of the time, because a state's highest court typically is not composed of volatile, capricious tyrants, and typically does not function as a trial court issuing original finding-of-fact-based determinations affecting the property interests of a party without any higher state court to correct its potential abuses and errors. However, that is precisely the case here, where

1
2
3
4
5
6
7
8

a malignant, insolent, vindictive majority of the Justices of the New Hampshire Supreme

Court punished Plaintiff, in a clandestine fashion censored from the eyesight of the legal

community at large, by "awarding" a monetary amount against him months after the case was

finished, unauthorized by their own Rule 23 absent any finding of frivolity or bad-faith, and

without even granting Maravelias a Hearing to dispute the falsified $4,900.00 amount. The

equitable maxim of *ubi jus ibi remedium* and the philosophy behind Rooker-Feldman

mutually require that a federal district court has original jurisdiction over such an action.

9
10
11
12
13
14
15
16
17
18

83.     Plaintiff is seeking further action in the matter inside the procedural vessel of

state appellate proceeding Defendants used for their tortious conduct. Plaintiff filed a "Motion

to Set Aside Judgment" with Defendants on 5/6/19 seeking reversal of their unlawful 3/29/19

Order. As of 6/17/19, Defendants have not issued any ruling. A "Motion to Set Aside

Judgment" is not a formally recognized motion in New Hampshire state courts; no rule

obligates Defendants to consider said motion. Accordingly, it is not a viable due process

mechanism giving Maravelias an opportunity to contest the 3/29/19 "award" or amount

thereof. It does, however, render the "state proceedings" "ongoing" and not "ended".

19
20
21
22

84.     DePamphilis, Plaintiff's opponent in the underlying civil appeal case, filed a

Motion for Contempt with Defendants against Plaintiff Maravelias on 5/16/19 because

Maravelias had paid DePamphilis only a portion of the full falsified $4,900.00 amount as of

that date, even though Defendants did not stipulate an exact deadline.

23
24
25
26
27
28

85.     Suing the New Hampshire Supreme Court as an entity to bring it into

compliance with federal law is equivalent to suing its personal officers and does not frustrate

any immunity the state may claim. Defendants' enforcement capacity of enforcing their own

original "$4,900 award" Order, according to their subjective, alleged application of their own

"Rule 23", likewise dismantles any 11th Amendment concerns: for DePamphilis <u>has already</u>

filed a "Motion for Contempt" against Maravelias with Defendants. "[T]he court and its chief justice were properly held liable in their enforcement capacities. Since the state statute gives the court independent authority on its own to initiate proceedings against attorneys, the court and its members were proper defendants in a suit for declaratory and injunctive relief, just as other enforcement officers and agencies are." *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719 (1980).

**Additional Indications of Defendants' Malicious and Extraordinary Conduct**

86.     In May 2019, Plaintiff conversed with Defendants' clerk assistant to clarify whether his 5/6/19 Motion would be considered. Plaintiff gave a brief summary of Defendants' unprecedented act. The assistant was visibly flabbergasted, shocked, and sympathetic. Visibly toiling to restrain the scope of her comments, she confirmed Defendants have no obligation to – and probably will not – consider the "post-mandate" 5/6/19 Motion to Set Aside Judgment.

87.     On 5/28/19, Plaintiff's 18-year-old sister Deborah Maravelias delivered oral argument before Defendant LYNN as part of Windham High School's participation in the "Civics 603" educational program. Deborah recalls that Defendant LYNN's "face dropped" upon hearing her last name spoken. Her classmates also observed his visible reaction.

88.     On 5/31/19 at approximately 1530 EDT, Plaintiff Maravelias delivered a Rule 7 Notice of Mandatory Appeal in person to the NHSC Clerk in relation to a separate civil matter. Defendant LYNN was ambulating through the interior hall besides the clerk's office. He suddenly glanced to Maravelias as Maravelias was delivering his appeal papers and conversing with the clerk. Eerily, Defendant LYNN sustained a moment of hostile eye-contact with Maravelias and a facial expression of irked contempt, leaving no doubt that Defendant visually recognized Maravelias.

89.     In June 2019, Plaintiff discovered Defendants' inexplicable self-censorship of their hostile Final Orders against Maravelias on the merits in <u>2018-0376</u> and <u>2018-0483</u> was not limited to redaction from the NH Supreme Court website. Defendants have entirely foreclosed and self-censored publication of their two public, unsealed Final Orders against Maravelias in traditional publication methods, such as, apparently, in the New Hampshire Reports: said Final Orders are non-existent within comprehensive commercial legal research databases readily containing like non-precedential NHSC "Other Final Orders" up to mere days ago. *See e.g. State v. Gillespie*, 2019 N.H. LEXIS 112, WL 2373745 (May 31st, 2019).

**Defendants' Fraudulent Conduct in Perspective**

90.     Defendants did not make any plain finding "deeming" Maravelias's appeal to be "frivolous" or "in bad-faith". Their heedless 2/21/19 order merely "granted" DePamphilis's fraudulent motion for extraordinary appellate attorney's fees and quipped, "See Rule 23".

91.     Defendants did not make any specific findings of fact from which a finding of the appeal as "frivolous" or "in bad faith" could be inferred.

92.     The allegation that Maravelias's appeal to Defendants was "frivolous" or "in bad-faith" is logically nullified by the erroneous predating 10/25/17 expense from the underlying fee award which DePamphilis himself waived in his appellate Opposing Brief.

93.     Maravelias's appeal to Defendants was not "frivolous" nor "in bad-faith".

94.     Maravelias soon anticipates needing to file another appeal in the NH Supreme Court in a separate civil matter. Defendants' conduct has caused Maravelias to fear that attempting to vindicate his legal rights in his state's only appellate forum will result in further monetary extortion and abuse.

95.     Defendants' act is unprecedented. Paul Maravelias is the single *pro se* Appellant in the entire 143-year modern history of the New Hampshire Supreme Court to be ordered under Rule 23 to pay a prevailing party's full attorney's fee bill.

## CAUSES OF ACTION

## COUNTS 1 AND 2
## VIOLATION OF THE FIRST AMENDMENT TO THE
## UNITED STATES CONSTITUTION (42 U.S.C. §1983)

**Defendants' Unprecedented Retaliatory Extortion Denies Maravelias's
Fair Access to the Courts and Unlawfully Punishes His Disagreed-With Speech**

96.     All paragraphs hereinabove are repeated herein as though fully set forth.

97.     The First Amendment guarantees "Congress shall make no law … abridging the freedom of speech, or of the press; or the right … to petition the Government for a redress of grievances". It applies to the states. *Stromberg v. California*, 283 U.S. 359 (1931).

## COUNT 1: FIRST AMENDMENT RETALIATION

98.     "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions … for speaking out." *Mercado-Berrios v. Cancel-Alegría*, 611 F.3d 18, 25 (1st Cir. 2010) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "Claims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." *Powell v. Alexander*, 391 F.3d 1, 16 (1st Cir. 2004).

99.     A plaintiff asserting a retaliation claim under the First Amendment must show 1) he engaged in constitutionally protected conduct, 2) the government took an adverse action against him, and 3) the protected conduct was a "substantial" or "motivating factor" in the government's decision to take the adverse action. *Mount Healthy City Sch. Dist. Bd. of Educ.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*v. Doyle*, 429 U.S. 274, 287 (1977); *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006); *Centro Medico del Turabo, Inc. v. Feliciano de Melecio,* 406 F.3d 1, 10 (1ˢᵗ Cir. 2005); *Davignon v. Hodgson*, 524 F.3d 91, 106 (1ˢᵗ Cir. 2008).

100.      Plaintiff's court filings to Defendants are protected speech. Defendants' "\$4,900" order, masked as a valid "Rule 23 attorney's fees award", is an adverse act against Plaintiff.

101.      Temporal proximity can satisfy the causation element of the First Amendment retaliation doctrine even amid factual circumstances far less compelling than Defendants' two concomitant knee-jerk Orders here, issued in two separate appeals coincidentally on the same day, 2/21/19. *See e.g.*, *Philip v. Cronin*, 537 F.3d 26, 33 (1ˢᵗ Cir. 2008). Reading between the lines of Defendants' two non-responsive 2/21/19 Orders, one can easily imagine Defendant LYNN's haughty persiflage muttered among his complicit colleagues, "*who the hell does this kid think he is*", "*we'll show it to that* pro se *bastard for standing up for his rights*", *etc.*

102.      Plaintiff's 1/28/19 Motion for Reconsideration to Defendants in <u>2018-0483</u> was firm in tone but does not authorize Defendants' retaliatory acts. Absent "fighting words", offensive speech to governmental actors is protected from retaliation. *See e.g., Greene v. Barber*, 310 F.3d 889, 895–97 (6ᵗʰ Cir. 2002) (calling a police officer an "asshole" and "stupid" protected from retaliation). The furthest Maravelias went was to call Defendants – accurately – the "Holy Feminist Court" in his prayer for relief. This does not come close.

103.      Defendants issued an unlawful order wrongly depriving Maravelias of \$4,900 in Defendants' subjective displeasure with Maravelias's speech and in punitive retaliation therefor – chiefly, for Maravelias's 1/28/19 Motion for Reconsideration and his 2/26/19 "Motion to Reconsider Anomalous, Arbitrary Rule 23 Award of Appeal Attorney's Fees".

104.    Defendants wrongfully retaliated against Plaintiff and thereby disparaged and violated Plaintiff's First Amendment rights, and continue to do so.

**COUNT 2: VIOLATION OF RIGHT TO PETITION**

105.    The First Amendment's Right to Petition clause is incorporated against the states. *Edwards v. South Carolina*, 372 U.S. 229 (1963). The First Amendment protects citizens' right to access state courts and prosecute civil actions. *Bill Johnson's Restaurants, Inc. v. Nat'l Labor Relations Bd.*, 461 U.S. 731, 734 (1983). "[T]he Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, et al. v. Guarnieri*, 564 U.S. 379 (2011).

106.    Defendants issued an unlawful order punishing Maravelias for rightfully filing a non-frivolous, properly intended Rule 7 Mandatory Appeal in New Hampshire's only appellate court. Defendants' acts have been and are currently repressing Maravelias's First-Amendment-protected usage of his only available appellate forum. Defendants' Orders are public and have a similar repressive effect to all potential appellants. Maravelias fears bad faith extortion and punitive abuse of power should he petition the government for redress (by appealing) in an ongoing NH Circuit Court case where his rights have been violated anew.

107.    Defendants' conduct is in violation of Plaintiff's Right to Petition.

**COUNT 3**
**VIOLATION OF PART I, ARTICLES 22 AND 32 OF THE**
**NEW HAMPSHIRE CONSTITUTION (28 U.S.C. § 1367(a))**

108.    All paragraphs hereinabove are repeated herein as though fully set forth.

109.    All claims brought herein under state constitutional law are directed exclusively towards Defendant ROBERT J. LYNN in his individual capacity only, consistent with

*Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 106, 121 (1984). Plaintiff brings all federal constitutional claims herein against all Defendants.

110.    Pt. I, Art. 22 and 23 of the NH Constitution provide equal or greater protections for the right to petition and for freedom of speech than the federal First Amendment.

111.    Counts 1 and 2 are repeated herein as though fully set forth. Defendants' acts referenced therein also violate Plaintiff's rights under N.H. CONST., Pt. I, Art. 22 and 32.

**COUNTS 4, 5 AND 6**
**VIOLATION OF THE FOURTEENTH AMENDMENT TO**
**THE UNITED STATES CONSTITUTION (42 U.S.C. §1983)**

112.    All paragraphs hereinabove are repeated herein as though fully set forth.

113.    The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law." "This guarantee has both substantive and procedural components." *Pagán v. Calderón*, 448 F.3d 16, 32 (1st Cir. 2006).

114.    Plaintiff claims two liberty or property interests which Defendants are depriving without valid due process. First, Maravelias's $4,900.00 US dollars is a monetary property interest. Second, wrongly implying Maravelias filed a "frivolous or bad-faith" appeal infringes on his personal liberty interest and right to be free from social or reputation stigma, which Defendants recognized in *State v. Veale*, 158 N.H. 632, 638–39, 972 A.2d 1009 (2009).

**COUNT 4: VIOLATION OF SUBSTANTIVE DUE PROCESS**

115.    "The substantive due process guarantee functions to protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions. *Pagan v. Calderon*, 448

F.3d 16, 32 (1ˢᵗ Cir. 2006) (citing *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). "[C]onscience-shocking conduct is an indispensable element of a substantive due process challenge". *DePoutot v. Raffaelly*, 424 F.3d 112 (1ˢᵗ Cir. 2005)

116.     Defendants conduct is conscience-shocking because they 1) accepted and fully adjudicated Maravelias's appeal, 2) knowingly observed that said appeal was necessary, at a bare minimum, to correct the erroneous 10/25/17 cost the trial court failed to correct, and 3) months later, after being angered by Maravelias's speech in a separate case, fraudulently held the appeal as "frivolous or in bad faith" to grant retaliatory punishment against Maravelias.

117.     Defendants conduct is also conscience-shocking because their acts are criminal Theft by Extortion (RSA 637:5), exercising unlawful control over Maravelias's monetary property and threatening punishment and reputational harm by contempt of court powers.

118.     Further exacerbating their extreme and outrageous conduct, Defendants 1) denied Maravelias a hearing on the Rule 23 Motion, 2) failed to make a single finding of fact, upon request, explaining why the appeal was possibly "frivolous or in bad faith", 3) failed to make an explicit finding that the appeal was "frivolous or in bad faith" in the first place, and 4) ordered punitive payment of DePamphilis's entire attorney's fees bill, whereas the function of Rule 23 is intended to be deterrent and not compensatory.

119.     All the above was subsequent to Defendants' initial abuse of power, issuing a shocking "screw-Maravelias" affirmation in the underlying appeal so utterly baseless that they intentionally self-censored it from their Final Orders webpage to avoid public backlash. Accordingly, it is beyond peradventure that Defendants conduct is "truly outrageous, uncivilized, and intolerable". *Hasenfus v. LaJeunesse*, 175 F.3d 68, 72 (1ˢᵗ Cir. 1999).

120.    Defendants violated Maravelias's substantive due process rights under the Fourteenth Amendment through their reckless conduct, and continue to do so.

**COUNT 5: VIOLATION OF PROCEDURAL DUE PROCESS**

121.    Defendants are aware and have stated that "under the fourteenth amendment … procedural due process applies [where] an individual faces a potential deprivation of a liberty or property interest." *State v. Gibbons*, 135 N.H. 320, 321, 605 A.2d 214 (1992).

122.    Defendants denied Maravelias due process of law when they rejected or ignored his written 2/26/19 request for a pre-deprivation hearing. Where a rightful extraordinary application of Rule 23's appeal-fees-punishment is distinguished from criminal extortion solely by the <u>factual question</u> of the "frivolity" or "bad-faith" nature of conduct, the right to hearing was paramount. *Cf. Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (pre-deprivation hearing not necessary for due process where there was <u>not</u> a factual dispute).

123.    Procedural due process requires "some form of hearing" before deprivation of property. *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 19 (1978). When an appellate court volunteers itself as an original fact-finder to determine whether to command a *pro se* 23-year-old Appellant to pay $4,900 to his rich lawyer-represented Executive VP & COO victimizer, it must at least grant an evidentiary hearing allowing said Appellant to cross-examine the Appellee on the purported factual grounds of the alleged "frivolous" or "bad-faith" conduct. This holds especially true under the circumstances for two compelling reasons:

124.    <u>First</u>, Defendants gave <u>no opportunity whatsoever</u> for Maravelias to respond to or contest DePamphilis's wildly fraudulent 3/4/19 Itemization of Appeal Costs and Affidavit, the origin of the "$4,900.00" figure. DePamphilis's 3/4/19 itemization deceptively furthered his original 12/28/18 request for attorney's fees (solely in connection with filing two motions)

1
2
3
4
5
6

all-the-sudden to the expanded realm of <u>DePamphilis's entire attorney fee bill for the entire appeal, start-to-finish</u>. Defendants accepted at face value DePamphilis's hyperextended "$4,900" figure and denied Maravelias's requested hearing. Having exhausted his single Motion for Reconsideration pursuant to <u>N.H. Supr. Ct. R.</u> 22, Maravelias's only remedy to challenge the fees itemization was the hearing he requested, which Defendants denied.

7
8
9
10
11
12

125.     <u>Second</u>, since Maravelias had repeatedly exposed DePamphilis's other fraudulent and malicious litigation conduct, the due process right to cross-examine at a physical hearing was "even more important". *Greene v. McElroy*, 360 U.S. 474 (1959). "The policy of the Anglo-American system of Evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law." *Id.*

13
14
15
16
17
18
19
20
21

126.     In such circumstances, the right to physical witness cross-examination is paramount for fair fact-finding. Even if Defendants' "Rule 23" extortion were justified, their refusal to hold an evidentiary hearing suffocated Maravelias's ability to correct the excessive "$4,900.00" amount. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970*). See also ICC v. Louisville & Nashville R.R.*, 227 U.S. 88, 93–94 (1913). *Cf.* § 7(c) of the Administrative Procedure Act, 5 U.S.C. § 556(d).

22
23
24
25
26
27
28

127.     Denying Maravelias a hearing deprived him of an "opportunity [to be heard] which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). Further, as Defendants made zero reference to Maravelias's specific arguments, rebuttals, and requests, it is dubitable that Defendants even gave more than a careless glance at Maravelias's 12/31/18 Objection and 2/26/19 Motion to Reconsider. Defendants' exiguous, knee-jerk, "screw-Maravelias" orders amount to a shameful abjuration

of Maravelias's right to be fully heard – whereas the requested in-person hearing would have forced Defendants to listen.

128.    Furthermore, Defendants violated due process when they justified their Order under "Rule 23" without making any explicit finding Maravelias's appeal was "frivolous or in bad faith" as Rule 23 requires. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980). "In this case, the trial court did not make a specific finding as to whether counsel's conduct constituted or was tantamount to bad faith, <u>a finding that should precede any sanction under the court's inherent powers</u>." *Id.* (Emphasis added).

129.    Defendants violated Maravelias's procedural due process rights under the Fourteenth Amendment through their acts and negligence, and continue to do so.

**COUNT 6: VIOLATION OF EQUAL PROTECTION CLAUSE**

130.    To state an equal protection violation claim, plaintiffs must "identify and relate specific instances where persons situated similarly 'in all relevant aspects' were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were 'singled … out for unlawful oppression.'" *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989).

131.    Defendants' erratic, hyperactive punishment of Maravelias is objectively inconsistent with the way similarly situated litigants in the past have been treated. For example, the New Hampshire Supreme Court entertained a Rule 23 attorney's fees request in *Funtown USA, Inc. v. Town of Conway*, 129 N.H. 352 (1987). <u>First</u>, said Rule 23 request was properly introduced and adjudicated as one "to require [defendant] to pay plaintiff's [entire] fees incurred in defending this appeal", not as a limited fees request for a certain motion and later surreptitiously metastasized into covering the whole appeal as with Defendants' 3/29/19

Order. <u>Second</u>, in *Funtown*, the court allowed both parties a fair opportunity to be heard and adjudicated the request in a full opinion (as opposed to a two-sentence procedural order). <u>Third</u>, the *Funtown* court denied the request, concluding, "the amount of attorney's fees awarded was quite large and by no stretch of the imagination could it be said that the appeal [thereof] was frivolous, particularly in view of the fact that the defendant has prevailed on one of the issues it raised."

132.     There can be no question "$9,029.51" is a "quite large" sum for a 22-year-old, nor that Maravelias indeed "prevailed on one of the issues" his appeal raised as DePamphilis <u>waived</u> the erroneous 10/25/17 expense in his Opposing Brief. Accordingly, the same factors present in *Funtown* through which "by no stretch of the imagination could it be said that the appeal was frivolous" were present in Maravelias's appeal. Defendants are therefore violating Maravelias's 14th Amendment right to equal application of laws and placing him into an indiscriminate "class-of-one". *See Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

133.     In more recent case law, Defendants have given fair-warning to dispel actual misconduct yet have capriciously extorted Appellant Maravelias with zero warning – after he committed <u>no</u> misconduct. In *Branch Banking and Trust Company v. Samson Duclair & a*, (NHSC Case No. 2015-0545), Defendants warned as follows,

> "At this time, we deny the lender's request for attorney's fees and other sanctions. However, if in future cases the defendants continue to press issues that have been finally resolved or are not properly before us, we will entertain a properly supported motion for attorney's fees." *Id*.

134.     By comparison, Defendants' 3/29/19 Order does not even retroactively identify any specific misconduct justifying their $4,900 fees award, let alone grant Maravelias a fair-warning to desist in any future misbehavior, as Defendants' dispensed in *Branch Banking*.

135.     In fact, it is impossible to discern a <u>single instance in history</u> where the New Hampshire Supreme Court has ever granted a Rule 23 attorney's fees sanction against a *pro se* litigant. *See e.g., Indorf v. Indorf*, 132 N.H. 45, 47 (1989) (denying Rule 23 fee award request against *pro se* litigant); *Walker v. Walker*, 119 N.H. 551 (1979) (not granting award of appeal attorney's fees even after "the <u>fourth time</u> the plaintiff has litigated these same issues and the <u>fourth time</u> he has been denied relief"), *etc.*

136.     To the extent the Defendants caused or permitted DePamphilis's original 12/28/18 request (seeking fees in connection with his the 10/19/18 pleadings) to blossom into a fraudulent, surreptitious request on 3/4/19 for <u>comprehensive</u> appeal attorney's fees – four months after the Final Order – Defendants violated equal protection by failing to reject the *de facto* untimely request. *See e.g., In the Matter of Tanya Braga-Pillsbury and Mickey Pillsbury* (NHSC Case No. 2018-0560), where Defendants squarely denied an untimely "frivolous appeal" attorney's fees request a few days before extorting Maravelias here.

137.     Accordingly, Defendants' conduct is in blatant disregard for the equal rights of Plaintiff, who has been treated much differently than similarly situated individuals. By subjecting Maravelias into a "class-of-one" – a target of their bad-faith anger and meritless subjective frustration – Defendants have violated and continue to violate the Equal Protection Clause of the U.S. Constitution.

### COUNT 7
### VIOLATION OF PART I, ARTICLES 2 AND 15 OF THE
### NEW HAMPSHIRE CONSTITUTION (28 U.S.C. § 1367(a))

138.     All paragraphs hereinabove are repeated herein as though fully set forth.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

139.     Pt. I, Art. 2 and 15 of the NH Constitution provide equal or greater protections

for procedure and substantive due process rights and equal protection rights than the federal

Fourteenth Amendment.

140.     Counts 4, 5 and 6 are repeated herein as though fully set forth. Defendants' acts

referenced therein also violate Plaintiff's rights under N.H. CONST., Pt. I, Art. 2 and 15.

**COUNTS 8 AND 9**
**VIOLATION OF THE EIGHTH AMENDMENT TO THE**
**UNITED STATES CONSTITUTION (42 U.S.C. §1983)**

141.     All paragraphs hereinabove are repeated herein as though fully set forth.

142.     The Eighth Amendment guarantees that "excessive bail shall not be required,

nor excessive fines imposed, nor cruel and unusual punishments inflicted".

**COUNT 8: VIOLATION OF EXCESSIVE FINES CLAUSE**

143.     In a dramatically fortuitous coincidence, Defendants issued their extortionate

"Rule 23" Order against Maravelias one day after the United States Supreme Court finally

incorporated the Excessive Fines Clause of the Eighth Amendment against the states in *Timbs*

*v. Indiana*, 586 U.S. ___ (2019) on February 20th, 2019.

144.     Defendants 3/29/19 Order and general conduct in both Maravelias-DePamphilis

appeals indicates that they are acting with the intention to punish and deter Maravelias. While

the Excessive Fines Clause "does not apply to awards of punitive damages in cases between

private parties," *Browning-Ferris Industries v. Kelco Disposal, Inc.,* 492 U.S. 257, 260

(1989), Defendants' Order purporting to be a "Rule 23" fees award is distinct from punitive

damages in a regular civil suit. The language of Rule 23 itself confirms said awards are solely

at the Defendants' "discretion", unlike the legal "right" to just money damages in a civil suit.

145.     Further, as previously detailed, Defendants' Rule 23 extortion conspiracy against Maravelias was never lawfully expanded to include punitive reimbursement for the <u>entire appeal</u> as opposed to solely the 10/19/18 pleadings. The relief requested on 12/28/18 by DePamphilis and granted by Defendants on 2/21/19 – even if that alone were not federally unlawful – would give rise to a maximum "fine" of $530.00, not $4,900.00. *See supra.*

146.     Accordingly, Defendants' 3/29/19 Order imposes an excessive fine against Maravelias in violation of the Eighth Amendment to the U.S. Constitution.

**COUNT 9: CRUEL AND UNUSUAL PUNISHMENT**

147.     All paragraphs under Count 6 are repeated as though fully set forth.

148.     Defendants' said excessive fine is separately and additionally a cruel and unusual punishment. Both the "cruelty" and "unusualness" thereof are plain from the aforesaid. Accordingly, Defendant's 3/29/19 Order imposes a cruel and unusual punishment against Maravelias in violation of the Eight Amendment.

**COUNT 10**
**VIOLATION OF PART I, ARTICLE 33 OF THE**
**NEW HAMPSHIRE CONSTITUTION (28 U.S.C. § 1367(a))**

149.     All paragraphs hereinabove are repeated herein as though fully set forth.

150.     Pt. I, Art. 33 of the NH Constitution provides equal or greater protections against governmental imposition of excessive fines or cruel and unusual punishment than the federal Eighth Amendment.

151.     Counts 8 and 9 are repeated herein as though fully set forth. Defendants' acts referenced therein also violate Plaintiff's rights under N.H. CONST., Pt. I, Art. 33.

**COUNTS 11 AND 12**
**N.H. SUPREME COURT RULE 23 IS FACIALLY INVALID IN VIOLATION**

## OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION
## (28 U.S.C § 1331, 1343)

152.     All paragraphs hereinabove are repeated as though fully set forth.

**COUNT 11: SUBSTANTIAL VIOLATION OF DUE PROCESS CLAUSE**

153.     Rule 23 lacks any explicit due process requirements for the fact-finder (the New Hampshire Supreme Court) to obey. While one would aspire the competent judicial providence of a state's highest court would suffice to ensure such elementary necessities be observed regardless, all experience hath shewn the contrary.

154.     All applications, or a substantial number, of Rule 23 are likely to abrogate a party's due process rights absent specific requirements that 1) the court make specific findings of fact and state its reasoning for granting any Rule 23 appellate attorney' fees order, 2) hold an evidentiary hearing if the "bad faith" or "frivolous" nature of an appeal is disputed, and/or 3) include an explicit time limit expressed in days after which a party cannot move for Rule 23 attorney's fees. *Cf.* Federal Rules of Civil Procedure, Rule 11(c), establishing certain due process provisions for sanctions missing from Defendants' Rule 23 (*e.g.*, requiring that the court "describe the sanctioned conduct and explain the basis for the sanction"). *Cf. also* Federal Rules of Appellate Procedure, Rule 38 ("*If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee*") (requiring notice and a "reasonable opportunity to respond").

**COUNT 12: UNCONSTITUTIONAL VAGUENESS**

155.     "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to

understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703 (2000).

156.     Defendants' Rule 23 stands virtually alone among the comparable civil procedure rules of other jurisdictions because it fails to specify what kind(s) of "attorney's fees" are authorized and under what occasions. It does not narrow recovery to "reasonable" attorney's fees, which would imply a certain deterrent but not fully compensatory amount. Nor does Rule 23 distinguish on its face between attorney's fees in connection with a certain "frivolous or bad-faith" pleading and that for an entire appeal case from start to finish. This ambiguity encourages "arbitrary enforcement", as is currently visible to anyone aware of Defendants' recent course of conduct.

157.     Comparable courts of law do not retain such problematic vagueness in their operative rules governing sanctions for improper litigation conduct. For example, FRCP 11, *supra,* leaves no uncertainty that the monetary sanction is limited to "the reasonable expenses, including attorney's fees, incurred for the motion". The language specifying the relief to be granted in FRAP 38, *supra*, likewise leaves no ambiguity. *Compare* "award just damages and single or double costs", *Id.*, *with* "award attorney's fees", N.H. Supr. Ct. R. 23.

158.     Defendants acted in concert and are jointly and severally liable for their conduct described in all foregoing Counts. As a direct and proximate result of thereof, Maravelias has suffered and continues to suffer actual harm and injury, including but not limited to the expenses associated with filing this action, opportunity costs of lost time, emotional injury and fear, and wrongful reputational damage.

## **JURY TRIAL DEMAND**

159.     Plaintiff demands a trial by jury on all counts as to all issues so triable.

1
2
3

## **PRAYER FOR RELIEF**

4
5

WHEREFORE, PREMISES CONSIDERED, Plaintiff Paul Maravelias respectfully

6
requests this Honorable Court:

7
    I.    Enter declaratory judgment on all foregoing Counts in favor of Plaintiff;

8
9
    II.   Enter a permanent injunction prospectively restraining all Defendants and their officials, employees, and agents from enforcing their unlawful order against Plaintiff issued 2/21/19 and finalized 3/29/19 in NH Supreme Court Case No.
10
2018-0376;

11
12
    III.   Enter a compensatory money judgment against Defendant ROBERT J. LYNN, in his individual capacity, to recompense Plaintiff's proximately caused actual damages;
13

14
    IV.   Award Plaintiff the reasonable costs, fees, and disbursements of this action;
15

16
    V.   Grant any further relief as may be deemed just and proper.

17
18
19

---

20
21
I, Paul Maravelias, declare that all factual stipulations within the foregoing First-Amended Verified Complaint are true and accurate to the best of my knowledge as of 6/17/2019.
22
23
24
25
26
27
28

Respectfully submitted,


PAUL J. MARAVELIAS

/s/ Paul J. Maravelias, *pro se*          Dated: June 17th, 2019

**Paul J. Maravelias**
34 Mockingbird Hill Rd
Windham, NH 03087
paul@paulmarv.com
603-475-3305


## <u>CERTIFICATE OF SERVICE</u>

I, Paul Maravelias, certify that a timely provided copy of this document
is being sent on this date to counsel of record for the Defendants
pursuant to the rules of this Court.

/s/ Paul J. Maravelias          Dated: June 17th, 2019
**Paul J. Maravelias**