**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Paul Maravelias, | * |
| | * |
| Plaintiff, | * |
| v. | *    Civil No. 1:19-cv-487-JL |
| | * |
| New Hampshire Supreme Court, et al | * |
| | * |
| Defendants. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

The defendants, the New Hampshire Supreme Court and Chief Justice Robert J. Lynn, respectfully move to dismiss the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In support thereof, the defendants state as follows:

## INTRODUCTION

1.     Plaintiff Paul Maravelias seeks to use this federal forum to evade an attorney's fees award entered against him by the New Hampshire Supreme Court.  He brings a twelve-count amended complaint against the New Hampshire Supreme Court and its Chief Justice, Robert J. Lynn, raising a litany of federal and state claims.

2.     Maravelias's claims are barred by the *Rooker-Feldman* doctrine.[1]   While Maravelias frames this action as a challenge to the New Hampshire Supreme Court Rule authorizing the award of fees against him, it is in fact nothing more than an attempt to undo a prior state-court judgment with which he disagrees.  This court should accordingly dismiss Maravelias's

---

[1] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

amended complaint for lack of subject-matter jurisdiction. *See Tyler v. Supreme Judicial Court of Mass.*, 914 F.3d 47, 51 (1st Cir. 2019) (*Rooker-Feldman* applies when "the plaintiff's federal suit is, in effect, an end-run around a final state-court judgment").

3.      Additionally, both defendants are immune from suit. Maravelias's claims against the New Hampshire Supreme Court are barred by the Eleventh Amendment. Likewise, Chief Justice Lynn is entitled to absolute judicial immunity on all of Maravelias's claims. These stand as independent bases to dismiss this action.

## STANDARD OF REVIEW

4.      The standards under Rules 12(b)(1) and 12(b)(6) are largely identical. *See Gordo-Gonzalez v. United States*, 873 F.3d 43, 48 (1st Cir. 2017). When ruling on a motion to dismiss under either rule, the court must "take the complaint's well-pleaded facts as true" and "draw all reasonable inferences in the plaintiff['s] favor." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018) (citation and internal quotation marks omitted). "Well pleaded facts must be non-conclusory and non-speculative." *Id.* (same omissions). To survive dismissal, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (same omissions). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Id.* (same omissions).

## BACKGROUND

5.      Maravelias filed his original complaint in this case on May 5, 2019. *See* ECF Doc. No. 1. The defendants timely moved to dismiss, raising the *Rooker-Feldman* doctrine, Eleventh Amendment immunity, and absolute judicial immunity as grounds for dismissal. *See* ECF Doc. No. 5. Maravelias then amended his complaint as a matter of course under Rule 15(a)(1)(B). *See*

ECF Doc. No 7.  The amended complaint includes the same twelve counts as the original complaint and is based on the same factual background.  *Compare id. with* ECF Doc. No. 1.  Indeed, the only material difference between the two pleadings is that the amended complaint includes several paragraphs explaining why, in Maravelias's view, the *Rooker-Feldman* doctrine, Eleventh Amendment immunity, and absolute judicial immunity do not bar his claims.  *See* ECF Doc. No. 7 ¶¶ 75, 79–85.[2]

6.      Thus, as was the case with Maravelias's original complaint, the relevant factual background can be summarized succinctly.[3]  On March 8, 2017, Maravelias filed a civil stalking petition against a David DePamphilis in New Hampshire Circuit Court.  *Id.* ¶ 12.  The Circuit Court denied that petition and awarded DePamphilis attorney's fees and costs.  *Id.* ¶¶ 19, 23. Maravelias appealed the denial of the petition and the fee award to the New Hampshire Supreme Court.  *Id.* ¶¶ 32.  The New Hampshire Supreme Court affirmed the Circuit Court's rulings in all respects.  *See* ECF Doc. No. 7-1.  DePamphilis then moved for an award of attorney's fees under New Hampshire Supreme Court Rule 23.  ECF Doc. No. 7-4.  Over Maravelias's objection, the New Hampshire Supreme Court granted DePamphilis's motion for fees on February 21, 2019, and directed DePamphilis to file an itemization of the attorney's fees he was seeking.  ECF Doc. No. 7-9.  DePamphilis filed an itemization on March 4, 2019, seeking $4,900.00 in fees.  ECF Doc.

_____

[2] In his amended complaint, Maravelias also references several purported events postdating his original complaint that he believes demonstrate that the defendants' conduct was "malicious and extraordinary."  *See* ECF Doc. No 7 ¶¶ 86–89.  As explained below, those purported events have no bearing on the outcome of this case.  *See infra* p. 11–12 n. 6.

[3] While Maravelias dedicates more than 70 paragraphs to describing the underlying state-court proceedings, he acknowledges that he is not challenging the vast majority of those actions in this lawsuit.  *See* ECF Doc. No. 7 ¶ 73.

No. 7-11.  The New Hampshire Supreme Court awarded DePamphilis that full amount in an order dated March 29, 2019.  ECF Doc. No. 7-12.  This action followed.

## ARGUMENT

### I.   Maravelias's claims are barred by the *Rooker-Feldman* doctrine.

7.     Under the *Rooker-Feldman* doctrine, "'lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.'"  *Tyler*, 914 F.3d at 50 (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006)).  *Rooker-Feldman* applies "where the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."  *Id.* (citations and internal quotation marks omitted).  "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment."  *Id.* (same omissions).

8.     Maravelias's claims are, by their plain terms, an attempt to use this federal forum to undo an award of attorney's fees entered against him by the New Hampshire Supreme Court.  This is evident from Maravelias's prayer for relief, where he asks the court to declare the attorney's fees award unconstitutional and to "[e]nter a permanent injunction prospectively restraining all Defendants and their officials, employees, and agents from enforcing" the attorney's fees award.  *See* ECF Doc. No. 7 at 34 (Prayer for Relief I & II).  To grant that relief, this court would necessarily have to review and reject the judgment of the New Hampshire Supreme Court in entering that award.  Under *Rooker-Feldman*, this court is not empowered to do so.  *See Tyler*, 914 F.3d at 50 ("The only federal court with statutory jurisdiction to review a state court's decision is the [United States] Supreme Court.").  Maravelias's claims must accordingly be dismissed.

9.      In tacit recognition that this case implicates the *Rooker-Feldman* doctrine, Maravelias devoted several paragraphs in his original complaint to explaining why, in his view, that doctrine does not apply.  *See* ECF Doc. No. 1 ¶¶ 67–77.  He replicates those arguments in his amended complaint, and adds several additional paragraphs.  *See* ECF Doc. No. 7 ¶¶ 67–84.  Each argument fails as a matter of law.

10.     First, Maravelias argues that *Rooker-Feldman* does not apply because the fees award challenged in this action is not the result of a "judicial proceeding."  Maravelias cites no legal authority for that proposition, and the defendants have been unable to identify any.  And it remains difficult to conceive how it is not a judicial act for a court to award attorney's fees to a party appearing before it under a rule that expressly bestows that court with discretion to award such fees.  *See* N.H. Sup. Ct. R. 23.  Maravelias's conclusory statement to the contrary is not entitled to an assumption of truth, *see Barchock*, 886 F.3d at 48, and therefore does not move this action beyond the reach of *Rooker-Feldman*.[4]

11.     Maravelias also argues that the *Rooker-Feldman* doctrine does not apply because he is challenging the constitutionality of Rule 23 itself, not the underlying fee award.  While "it is true that the *Rooker-Feldman* doctrine does not bar a general attack on the constitutionality of a state law that does not require review of a judicial decision in a particular case," "that exception

---

[4] To the extent Maravelias suggests that an award of attorney's fees cannot constitute a final state-court judgment for the purposes of *Rooker-Feldman*, he is incorrect.  *See, e.g.*, *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 604–07 (7th Cir. 2008) (holding that federal claims alleging that debt collectors violated Federal Debt Collection Practices Act by seeking attorney's fees award in state-court collections actions were barred by *Rooker-Feldman* because federal court hearing FDCPA action would have to evaluate state-court judgments); *Frierson-Harris v. Kall*, 198 F. App'x 529, 530 (7th Cir. 2006) (holding that challenge to state-court attorney's fees award was barred by *Rooker-Feldman* despite plaintiff's allegation that the award was the result of a conspiracy).

does not apply if the relief sought in federal court is directed toward undoing the prior state judgment." *Tyler*, 914 F.3d at 51 (citations and internal quotation marks omitted). "[T]he critical datum is whether the plaintiff's federal suit is, in effect, an end-run around a final state-court judgment." *Id.* (same omissions). Maravelias brings this action to invalidate an adverse state-court judgment with which he disagrees. The mere fact he attempts to do so by challenging Rule 23 does not render the *Rooker-Feldman* doctrine inapplicable.

12. In his amended complaint, Maravelias contends that *Rooker-Feldman* does not apply because the challenged fee award was a void state judgment. He raises two arguments to this end: (1) that the New Hampshire Supreme Court was without jurisdiction to award the fees in question, and (2) that the fee award violated due process because it was incompatible with the maxim *ubi jus ibi remedium*. Both of these arguments are unavailing.

13. Maravelias's jurisdiction argument is simply wrong. The New Hampshire Supreme Court's jurisdiction is not limited, as Maravelias suggests, to appellate review of lower court decisions. Part II, Article 73-a of the New Hampshire Constitution states: "[The Chief Justice] shall, with the concurrence of a majority of the supreme court justices, make rules governing the administration of <u>all courts in the state</u> and the practice and procedure to be followed in such courts." (Emphasis added.) Likewise, N.H. Rev. Stat. Ann. § 490:4 provides: "The supreme court shall have general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses, including the authority to approve rules of court . . . ." Thus, the New Hampshire Supreme Court has broad constitutional and statutory authority to promulgate rules designed to aid all levels of the New Hampshire judiciary "correct errors and abuses." Rule 23, which authorizes the New Hampshire Supreme Court to "award attorney's fees related to an appeal to a

6

prevailing party if the appeal is deemed by the court to have been frivolous or in bad faith," plainly

fits within the scope of that jurisdiction.

14.     Maravelias's reliance on the maxim *ubi jus ibi remedium*—in his words, "for every

wrong, there must be a remedy," ECF Doc. No. 7 ¶ 82—is likewise misplaced for at least two

reasons.  First, that maxim, to the extent it has been recognized by the United States Supreme

Court, *see Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 147 (1803), is not absolute and certainly

does not mean that for every wrong there must be a remedy *in federal court*.  *See, e.g.*, *Rucho v.*

*Common Cause*, __ U.S. __, No. 18-422, 2019 WL 2619470, at *17 (U.S. June 27, 2019)

("Excessive partisanship in districting leads to results that reasonably seem unjust. But the fact

that such gerrymandering is incompatible with democratic principles does not mean that the

solution lies with the federal judiciary." (citation and quotation marks omitted)).  Moreover, the

*Rooker-Feldman* doctrine is not premised on an assumption that state courts will always get it

right, but rather on the fact that the only federal court with statutory jurisdiction to review a state-

court judgment is the United States Supreme Court.  *See* 28 U.S.C. § 1257(a).

15.     This leads to the second, more fundamental problem with Maravelias's *ubi jus ibi*

*remedium* argument: Maravelias did have federal forum—the United States Supreme Court—in

which he could have sought to vindicate his federal rights.  *See id.*; *see also Tyler*, 914 F.3d at 50

("[T]he only federal court with statutory jurisdiction to review a state court's decision is the

[United States] Supreme Court.").  The fact Maravelias apparently chose not to file a petition for

writ of certiorari seeking the Supreme Court's review does not mean he was without avenue for

any remedy for the wrongs he alleges he suffered.  Thus, even if Maravelias's invocation of *ubi*

*jus ibi remedium* was based on a correct statement of law, it still would not defeat *Rooker-Feldman*

in the present context.

16.     Finally, Maravelias also suggests in his amended complaint that *Rooker-Feldman* does not apply because the state-court proceedings are "ongoing."  But he bases this suggestion solely on the fact that he filed a post-judgment motion in the New Hampshire Supreme Court that he acknowledges "is not a formally recognized motion in New Hampshire state courts" and one that "no rule obligates [the defendants] to consider."  ECF Doc. No. 7 ¶ 83.  The *Rooker- Feldman* doctrine is not so frail that a state-court litigant can avoid its application merely by continuing to file motions in the underlying state-court proceeding indefinitely.  Again, the "critical datum is whether the plaintiff's federal suit is, in effect, an end-run around a final state court judgment." *Tyler*, 914 F.3d at 51 (citation and quotation marks omitted).  Here, there is no reason to believe that the New Hampshire Supreme Court will reconsider its fee award.  This is enough to render that award final for *Rooker-Feldman* purposes.  *See id.* at 52 (noting that state-court proceedings are sufficiently final when there is "no suggestion that the [state] court will ever reconsider the federal claims" raised in the subsequent federal action).

17.     In sum, Maravelias asks this court, in substance if not form, to vacate a judgment duly entered by the New Hampshire Supreme Court.  The *Rooker-Feldman* doctrine prevents this court from doing so.  Consequently, the court should dismiss Maravelias's amended complaint for lack of jurisdiction.

## II.     Maravelias's claims against the New Hampshire Supreme Court are also barred by the Eleventh Amendment.

18.     Even if *Rooker-Feldman* did not bar Maravelias's claims against the New Hampshire Supreme Court, this court would still lack jurisdiction over those claims under the Eleventh Amendment.  "As a general matter, 'states are immune under the Eleventh Amendment from private suits in federal courts.'"  *Wojcik v. Mass. State Lottery Comm.*, 300 F.3d 92, 99 (1st Cir. 2002) (quoting *Greenless v. Almond*, 277 F.3d 601, 606 (1st Cir. 2002)).  Judge McAuliffe

has previously found that the New Hampshire Supreme Court is a "state entity" entitled to Eleventh Amendment immunity, *see Macdonald v. Broderick*, 2004 DNH 137, 9, and his conclusion is consistent with the holdings of several circuit courts of appeals, *see, e.g.*, *Mumford v. Basinski*, 105 F.3d 264, 269 (6th Cir. 1997); *Landers Seed Co. v. Champaign Nat. Bank*, 15 F.3d 729, 732 (7th Cir. 1994); *Clark v. Clark*, 984 F.2d 272, 273 (8th Cir. 1993). It is also consistent with the provision of the New Hampshire Constitution establishing the state judicial branch, which states: "The judicial powers *of the state* shall be shall be vested in a supreme court, a trial court of general jurisdiction known as the superior court, and such lower courts as the legislature may establish under [Part II, Article 4]." N.H. Const. pt. II, art 72-a (emphasis added). The New Hampshire Supreme Court is therefore a branch of the state government entitled to Eleventh Amendment immunity.

19.     Maravelias resists this conclusion by arguing that "[s]uing the New Hampshire Supreme Court as an entity to bring it into compliance with federal law is equivalent to suing its personal officers and does not frustrate any immunity the state may claim." ECF Doc. No. 7 ¶ 85. This argument is based on a misunderstanding of how Eleventh Amendment immunity applies. While the *Ex Parte Young* doctrine "permits suits to proceed against state officers in their official capacities to compel them to comply with federal law," *Vaquieria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 478 (1st Cir. 2009) (*Ex Parte Young*, 209 U.S. 123 (1908)), it does not extend to suit brought against the state itself, *see O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000) ("[T]he Eleventh Amendment is not a bar to the naming of a state official, *rather than the state or agency*, as a defendant." (emphasis added)). Thus, to the extent Maravelias names the New Hampshire Supreme Court itself as a defendant, *Ex Parte Young* provides no quarter.

20.     Maravelias's reliance in *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719 (1980), is also unavailing.  While that case has a convoluted procedural history, the trial court dispatched with Eleventh Amendment immunity in a footnote in its earliest decision, *see Consumers Union of U. S., Inc. v. Am. Bar Ass'n*, 427 F. Supp. 506, 509 n. 4 (E.D. Va. 1976), and the issue was never subsequently revived, including on appeal to the Supreme Court, *see Supreme Court of Va. V. Consumers Union of U.S., Inc.*, 446 U.S. 719, 729 (1980).  As such, the Supreme Court did not have the opportunity to consider Eleventh Amendment immunity on appeal in that case and its decision cannot be read to support Maravelias's contention that the Eleventh Amendment does not apply.  *Cf. S. Christian Leadership Conference v. Supreme Court of State of La.*, 252 F.3d 781, 783 n. 2 (5th Cir. 2001) (noting that it is "well established that the Eleventh Amendment protects state supreme court" but that the Louisiana Supreme Court "refrained from advancing any argument that the Eleventh Amendment bars suit at this stage of the case, even after inquiry at oral argument").  The Supreme Court's decision in *Supreme Court of Virginia* therefore does not stand in the way of this court dismissing the New Hampshire Supreme Court on Eleventh Amendment grounds.

## III.     Marvelias's claims against Chief Justice Lynn are barred by the doctrine of absolute judicial immunity.

21.     Finally, the doctrine of absolute judicial immunity bars Maravelias's claims against Chief Justice Lynn.  The First Circuit recently discussed that doctrine in *Zenon v. Guzman*, 924 F.3d 611 (1st Cir. 2019).  In that case, the First Circuit noted that the Supreme Court set forth the doctrine in *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335 (1871), and emphasized that the "breadth of the protection is fulsome, shielding judges even when their actions are malicious, corrupt, mistaken, or taken in bad faith."  *Id.* at 616.  The First Circuit noted that "it is an axiom of black letter law that when a judge carries out traditional adjudicatory functions, he or she has absolute

immunity for those actions." *Id.* (citing *Goldstein v. Galvin*, 19 F.3d 16, 25 (1st Cir. 2013)).  The court further explained that "immunity is overcome only in cases where a judge is carrying out a nonjudicial action, or in instances where a judge takes an action, though seemingly 'judicial in nature,' that is 'in the complete absence of all jurisdiction.'"  *Id.* at 617 (quoting *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam)).  Thus, according to the First Circuit, "the relevant inquiry is the 'nature' and 'function' of the act, not the act itself."  *Id.* (quoting *Mireles*, 502 U.S. at 13).

22.    It remains unclear from Maravelias's amended complaint how precisely he believes Chief Justice Lynn violated his rights.  But regardless of the precise theory underpinning the claims against the Chief Justice, those claims are barred by the doctrine of judicial immunity.   As discussed above, the crux of this lawsuit is a challenge to an attorney's fees award entered against Maravelias by the New Hampshire Supreme Court.   Contrary to Maravelias's suggestion, that award was plainly a judicial act.  And, as explained above, it was a judicial act made pursuant to a rule that Chief Justice Lynn, with the concurrence of a majority of his colleagues, had express constitutional and statutory authority to promulgate.  The fee award therefore falls squarely within the protection judicial immunity affords.[5]  Thus, even if the court had subject-matter jurisdiction over this action, Maravelias's claims against Chief Justice Lynn would still need to be dismissed.[6]

---

[5] Though he never articulates it outright, Maravelias suggests that New Hampshire Supreme Court acted in excess of its jurisdiction in awarding the fees in question.  His statements to this effect are conclusory, and are therefore not entitled to the assumption of truth.  But even if they were entitled to such an assumption, absolute judicial immunity would still apply.  *See Stump v. Sparkman*, 435 U.S. 349, 355–357 (1978) (noting that acts in excess of jurisdiction remain entitled to judicial immunity); *see also id.* at 357 n. 7 (illustrating the difference between a judicial act in excess of jurisdiction and one in clear absence of all jurisdiction).

[6] Maravelias has added several paragraphs to his amended complaint concerning interactions that he and family members have allegedly had with New Hampshire Supreme Court personnel, including Chief Justice Lynn, since Maravelias filed his initial complaint.  *See* ECF Doc. No. 7 ¶¶ 86–89.  Maravelias asks this court to infer from these purported interactions, and in particular from facial expressions Chief Justice Lynn allegedly made during these interactions, that the

## CONCLUSION

23.     Nothing in Maravelias's amended complaint changes the outcome of this case.  This court still lacks jurisdiction over Maravelias's claims under the *Rooker-Feldman* doctrine, the Eleventh Amendment still bars Maravelias's claims against the New Hampshire Supreme Court, and Chief Justice Lynn is still entitled to absolute judicial immunity.  For these reasons, and those stated above, the court should grant this motion and dismiss Maravelias's amended complaint in its entirety.

24.     No separate memorandum of law is required in support of this motion as all of the relevant legal authority relied upon is cited herein.  LR 7.1(a)(2).

WHEREFORE, the defendants respectfully request that this Honorable Court issue an order:

A.  Granting this motion to dismiss;

B.  Dismissing all of the claims against them; and

C.  Granting any such further relief as the court may deem just and equitable.

Respectfully submitted,

**THE NEW HAMPSHIRE SUPREME COURT and CHIEF JUSTICE ROBERT J. LYNN**

By their attorney,

---

attorney's fees award at issue in this case was imposed by the defendants maliciously.  The court should disregard these allegations, as they are implausible on their face and nothing more than base speculation.  *See Barchock*, 886 F.3d at 48; *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 252 (2010).  Yet, even when assumed true, these allegations in no way suggest that Chief Justice Lynn acted in clear absence of all jurisdiction such that judicial immunity would not apply.  Indeed, it is unclear how these purported interactions relate to any of the arguments raised by the defendants in the prior motion to dismiss.  They therefore have no bearing on the outcome of this action, and Maravelias's reliance on them is misplaced.

12

THE OFFICE OF THE NEW HAMPSHIRE
ATTORNEY GENERAL


Date:   July 1, 2019                      /s/ Nancy J. Smith_____
                                          Nancy J. Smith, NH Bar ID # 9085
                                          Senior Assistant Attorney General
                                          New Hampshire Attorney General's Office
                                          33 Capitol Street
                                          Concord, NH 03301
                                          Phone: (603) 271-3650
                                          nancy.smith@doj.nh.gov


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all parties using the court's ECF
system


Date:   July 1, 2019                      /s/ Nancy Smith_____
                                          Nancy J. Smith