# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| PAUL MARAVELIAS, | ) | Civil No. 1:19-CV-00487(JL) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUPREME COURT OF NEW HAMPSHIRE, and | ) | **HEARING REQUESTED** |
| ROBERT J. LYNN, in his individual and official | ) | |
| capacities as Chief Justice of the Supreme Court of | ) | |
| New Hampshire. | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

NOW COMES Paul Maravelias ("Plaintiff") and Objects to Defendants' 7/1/19 Motion to Dismiss Amended Complaint (ECF Doc #8). In further support thereof, Plaintiff states as follows:

### INTRODUCTION

1.     All but one of the five Justices of the New Hampshire Supreme Court have committed malicious non-judicial ministerial acts of extortionate retaliation, accounting fraud, and pecuniary theft against Plaintiff. Defendants used a months-finished state appeal case as a procedural vehicle for their subsequent, disconnected tortious acts. If any non-governmental agency had committed these same wrongs, they doubtlessly would already have been prosecuted by criminal law enforcement. Notwithstanding, Defendants now move to dismiss all claims.

2.     Plaintiff objects. Defendants' Motion to Dismiss sounds in lack of subject matter jurisdiction, judicial immunity, and an Eleventh Amendment bar to suit. To buttress these claims,

Defendants suggest wrongly that Plaintiff is bringing this suit to complain about unfavorable results of a judicial proceeding. On the contrary, this suit addresses Defendants' patently criminal acts of fraud and theft, performed in the name of a rule they themselves promulgate and enforce. Defendants' acts are <u>ministerial diktats sharply distinguished, both procedurally and temporally, from their judicial rulings</u> on the substance of the incident appeal case. Plaintiff obviously does not have any adequate remedy in state courts since Defendants themselves are the apex thereof.

## STANDARD OF REVIEW

1.      Ruling on a Rule 12(b) Motion to Dismiss, the Court determines whether the Complaint alleges "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## ARGUMENT

**I.      The Rooker-Feldman Doctrine Does Not Bar Plaintiff's Claims**

2.      The Rooker-Feldman doctrine prevents federal district courts from acting as appellate courts over final state court judgments. The Supreme Court has circumscribed the oft-misapplied doctrine in scope, establishing rigid criteria for its application. See *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517 (2005); *Lance v. Dennis*, 546 U.S. 459 (2006). The First Circuit has clarified that "the Rooker-Feldman doctrine now applies only in the 'limited circumstances' where 'the losing party in state court filed suit in federal court after the

state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" *Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 23-24 (1st Cir. 2005) (*quoting Exxon*, 125 S. Ct. at *1526).

3.      As Defendants' 3/29/19 Order was non-judicial and outside their appellate jurisdiction, it is void *ab initio* and unable to trigger the Rooker-Feldman bar. Rooker-Feldman does not apply where the underlying state judgment is void *ab initio*. *In re James*, 940 F.2d 46 (3d Cir. 1991). Federal district courts "have the power to vacate … state court judgments that are considered void ab initio." *Id.* at *52. Further, Plaintiff crucially points out that Defendants' 2/21/19 and 3/29/19 Orders were not "judgments" to begin with. This follows from the legal definition of a "judgment" (necessitating the existence of a "right") and the plain language of NHSC Rule 23 which explicitly states such awards are not granted as "a matter of right". *See* Amended Complaint, ¶76 – 78.

### A.      Defendants' Illegal and Tortious Conduct Was In Complete Absence of Their Appellate Jurisdiction

4.      Plaintiff repeats and incorporates by reference his argumentation hereon at Amended Complaint, ECF Doc #7 at ¶79 – 81.

5.      Defendants' Motion to Dismiss fails to respond persuasively. Defendants correctly note that "the New Hampshire Supreme Court has broad constitutional and statutory authority to promulgate rules designed to aid all levels of the New Hampshire judiciary 'correct errors and abuses.'" ECF Doc #8 at ¶13. Defendants then assert "Rule 23, which authorizes the New Hampshire Supreme Court to 'award attorney's fees related to an appeal to a prevailing party if

the appeal is deemed by the court to have been frivolous or in bad faith,' plainly fits within the scope of that jurisdiction." *Id.*

6.      For the sake of argument, Plaintiff Maravelias can agree. However, Defendants' misplaced statement does nothing to dispel Plaintiff's claim their 2/21/19 and 3/29/19 Orders were in excess of their appellate jurisdiction. Plaintiff has squarely alleged Defendants <u>did not actually apply Rule 23 in their extortionate, larcenous harassment order</u>, because they did not ever make the prerequisite finding "deem[ing] [the appeal] to have been frivolous or in bad faith". *See* <u>Amended Complaint</u>, ¶90. Defendants' conduct is consequently in total absence of any jurisdiction as they have no authority to conjure illegitimate pecuniary "awards" against an appellant excusing themselves through scant passing reference to a rule they themselves did not follow.

**B.      Defendants' Larcenous "$4,900" Retaliation-Award Was Not a "Judicial Act"**

7.      "Significantly, the Rooker-Feldman doctrine bars review only of those state court decisions that are judicial in nature." *Williams v. Individual Justices of the Supreme Judicial Court*, 245 F. Supp. 2d 221, LEXIS 2123 (D. Me. 2003) (quoting *Feldman*, 460 U.S. at 476.) "[I]t is a question of federal law whether 'a particular proceeding before another tribunal was truly judicial' for purposes of ascertaining the jurisdiction of a federal court." *Feldman*, 460 U.S. at *476 n.13. "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. … Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Feldman*, 460 U.S. 462 at *477 (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 29 S. Ct. 67 (1908)).

8. Plaintiff alleges, verifiably from the bare judicial record alone, that "Defendants did not even attempt to adorn their reckless conduct with the visage of a 'judicial inquiry'. They made no specific findings of fact, ignored Maravelias's request for a hearing, and cited zero case law or statutes in connection with the 'Rule 23' award." Amended Complaint, ¶78. It is beyond peradventure that Defendants thus failed to conduct a "judicial inquiry" even if their acts were not in excess of jurisdictional authority. Rather, they "change[d] existing conditions" and effectively enacted a "new rule" by punishing a state appellant whose public criticism and protected speech-acts irked them, consummating the essence of a legislative, not "judicial", act.

9. Plaintiff repeats and incorporates by reference his argumentation hereon at Amended Complaint, ECF Doc #7 at ¶74 – 78.

### C. Even Assuming *Dubitante* That Defendants' Conduct Was A Judicial Act and Was Within Jurisdiction, The State Proceedings Are Not Ended, Separately Disqualifying Rooker-Feldman

10. "It is a condition precedent to the application of the Rooker-Feldman doctrine that, at the time the federal-court suit is commenced, the state-court proceedings have ended." *Coggeshall v. Mass. Bd. of Registration of Psychologists*, 604 F.3d 658 (1st Cir. 2010) at *643 – 644. "Here, the state-court proceedings had not yet ended, so the Rooker-Feldman doctrine was inapposite". *Id.* at *644.

11. Multiple motions remain pending on the NHSC docket in 2018-0376 in relation to Defendant's 2019 $4,900 "Rule 23" theft conspiracy, zero of which pertain to the merits of the underlying appeal case finished in 2018. On 5/6/19, Maravelias filed a (1) Motion to Stay, (2) Motion to Set Aside Judgment, (3) Motion for Clarification. DePamphilis has subsequently filed a baseless Motion for Contempt against Maravelias, and Maravelias has filed an exhaustive Motion

for Contempt against DePamphilis's attorney for twenty-three (23) counts of documented criminal conduct done in conspiracy with Defendants to accomplish the unlawful $4,900 extortion conspiracy. All five such Motions are still pending Defendants' action. The "state proceedings" are unquestionably not ended.

12.     The First Circuit has stipulated three conditions in which the state proceedings are "ended" for Rooker-Feldman purposes, none of which apply here. "First, when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, then without a doubt the state proceedings have 'ended.'" *Federación de Maestros de P.R.,* 410 F.3d at *18. Here, not one but five separate matters remain on the NHSC docket to be resolved. "Second, if the state action has reached a point where neither party seeks further action, then the state proceedings have also 'ended.'" *Federación de Maestros de P.R.,* 410 F.3d at *19. Likewise, both Maravelias and DePamphilis are seeking further action and have filed five separate motions in the case since the filing of this federal suit. "Third, if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated, then the state proceedings have 'ended' within the meaning of *Rooker-Feldman* on the federal questions at issue." *Federación de Maestros de P.R.,* 410 F.3d at *20. While a few of the pending motions in the state proceedings do not involve federal questions, Maravelias's 5/6/19 Motion to Set Aside Judgment (**Exhibit A**) does.[1] It (1) asserts all federal constitutional claims as presented in Plaintiff's Original Complaint in the instant case and

---

[1] This state court pleading attached as **Exhibit A** is a public court document: a matter of public record susceptible to judicial notice and thus to this Court's consideration in ruling upon a Rule 12 motion to dismiss, even if not appended to the Amended Complaint. *See Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008).

(2) separately references 18 U.S. Code § 875, a federal criminal statute. *See* **Exhibit A** at 2, ¶5, 6. Accordingly, the third prong of the Rooker-Feldman state-proceeding-finality test remains likewise unfulfilled.

### D. Even If The State Proceedings Were "Ended", Plaintiff's Requested Relief Does Not Seek Appellate Reversal Of Any Final State Court "Judgment"

13. The Supreme Court commands that Rooker-Feldman cannot apply unless an action "invit[es] district court review and rejection of [preexisting final state] judgments". *Exxon*, *supra*.

14. There is no state court judgment on the constitutionality of Defendants' larcenous "$4,900" scheme. Their 3/29/19 Order utterly ignored and did not adjudicate the federal constitutional claims Maravelias raised in his 2/26/19 Motion to Reconsider the anomalous so-called "Rule 23" award. Accordingly, the requested declaratory judgment that the 3/29/19 Order violates federal constitutional rights does not amount to an appellate reversal thereof; it would only prospectively implicate future unlawful enforcement efforts. This is of particular concern since DePamphilis has filed a Motion for Contempt against Maravelias for allegedly violating the 3/29/19 Order in failure to make full payment of the "$4,900" figure. *See e.g. Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1170 (10th Cir. 1998). "[O]n its facts, Pennzoil demonstrates that asking a federal court to enjoin post-judgment collection procedures that allegedly violate a party's federal rights <u>is distinguishable</u> from asking a federal court to review the merits of the underlying judgment." *Id.* (Emphasis added); *Fontana Empire Ctr., Ltd. Liab. Co. v. City of Fontana*, 307 F.3d 987 (9th Cir. 2002) (quotation marks omitted) "Thus, under the teachings of Pennzoil, Kiowa Indian Tribe, and Catz, FEC's claims are not barred because they are 'separable from and collateral to' the merits of the state-court judgment" (distinguishing review of underlying state court judgment with unlawful post-judgment enforcement thereof). Further,

Plaintiff's Amended Complaint seeks an injunction restraining solely the <u>enforcement</u> of the unlawful NHSC Orders. The relief sought does not command Defendants to issue a new order reversing its 2/21/19 and 3/29/19 Orders. The Rooker-Feldman doctrine is thus separately inapplicable on these grounds.

   **E.  Principles of Equity and Federalism Mandate that Maravelias Must Have Remedy in This Court's Original Federal Question Jurisdiction**

15.    The Rooker-Feldman doctrine assumes that offending "state court judgments" in question have already been subject to – or that the movant has already had some form of available remedy in – state appellate review. Here, Defendants abused their power through self-censored, unilateral orders *sub rosa* to abuse, harass, and extort Maravelias, while subject to no higher state judicial authority. Plaintiff repeats and incorporates by reference his detailed argumentation hereon at <u>Amended Complaint</u>, ECF Doc #7 at ¶82. Defendants cite *Rucho v. Common Cause*, __ U.S. __, No. 18-422, 2019 WL 2619470, at *17 (U.S. June 27, 2019) to suggest that, even though the equitable maxim *ubi jus ibi remedium* may necessitate some form of legal remedy exist for every wrong, this remedy need not necessarily exist in "federal" court. However, it is obvious Maravelias could have no state court remedy whatsoever, since the Defendants themselves happen to be the highest judicial actors thereof. "Initially, as a practical matter, because the highest court in Colorado is the promulgator of the rule and a party of this action, requiring the plaintiff to bring his case in state court first would be an apparent exercise in futility." *Helminski v. Supreme Court of Colorado*, 603 F. Supp. 401 (D. Colo. 1985).

16.    While Defendants correctly note Maravelias had the opportunity to file a certiorari petition with the United State Supreme Court under 28 U.S.C. § 1257(a), this fails to satisfy the equitable maxim at hand for two distinct reasons. First, there is no mandatory right of appeal to

the Supreme Court. At its sole discretion, it grants less than two percent of certiorari petitions filed per annum. In the extraordinary case at bar, the New Hampshire Supreme Court acted <u>as an original finder of fact</u>, exceeding its ordinary supervisory function as an appellate court, and rampantly violated Plaintiff's federal rights while so doing. The U.S. Supreme Court's discretionary certiorari jurisdiction over state court judgments assumes injured plaintiffs have already had an opportunity to litigate their federal constitutional claims in some form of state or federal judicial forum. Hence, this Court must exercise jurisdiction over this action according to *ubi jus ibi remedium*, since (1) there was no higher state court to review Defendants' allegedly illegal acts, and (2) the U.S. Supreme Court's insufficient, exceptionally rarely granted certiorari jurisdiction does not guarantee the injured party's federal claims will be heard. This practical reality may be acceptable in the vast majority of cases where an unfavorable judgment appealable to the U.S Supreme Court has already passed through one or multiple levels of state/federal appellate review, or has had the opportunity to; however, to deny federal district court jurisdiction over the case at bar where the New Hampshire Supreme Court is the original tortfeasor would violate the maxim of equity.

17. Second, and separately, even if Plaintiff could appeal to the U.S. Supreme Court as of right, rather than by a two-percent shot-in-the-dark probabilistic gamble, the equitable maxim would still be violated because the Supreme Court only reviews federal questions preserved in the state case. This Court's original federal question jurisdiction under 28 U.S.C. § 1331 and 1343 is broader; *e.g.*, the Amended Complaint includes two claims against Defendants under the Eighth Amendment Excessive Fines Clause and Cruel and Unusual Punishment Clause, whereas Maravelias only preserved his First and Fourteenth Amendment claims in the underlying state case. Accordingly, the U.S. Supreme Court would be unable to adjudicate the Eighth Amendment

claim in any event, separately violating the maxim should this Court incorrectly decline jurisdiction.

      **F.**      **Rooker-Feldman Cannot Bar Plaintiff's General Facial Constitutional Challenge to Rule 23**

18.      Counts 11 and 12 of Plaintiff's Amended Complaint are general challenges to the facial constitutionality of Defendants' "Rule 23". Plaintiff's argumentation therein is fully divorced from the particular facts and circumstances of his individual claims against Defendants' conduct as it relates to him. Declaratory judgment that Rule 23 is unconstitutional is not "relief directed toward undoing the prior state court judgment" nor an "end-run around" the said because (1) it would not have retroactive effect and, separately, (2) Plaintiff alleges Defendant <u>did not actually apply</u> Rule 23 in their tortious conduct, but merely cited "Rule 23" as a false excuse for their conduct. *Tyler v. Supreme Judicial Court of Mass.*, 914 F.3d 47, 51 (1st Cir. 2019). Defendants never made a finding Maravelias's state appeal was "frivolous or in bad-faith" before capriciously punishing him with an unlawful, extortionate commandment – a threadbare two-sentence order invoking passing reference to Rule 23, a state court rule which <u>requires</u> that Defendants make such a finding. *See* <u>Amended Complaint</u>, ECF Doc #7 at ¶90.

## II.    <u>The Eleventh Amendment Does Not Unseat Maravelias's Claims Against the New Hampshire Supreme Court</u>

19.      As a preliminary matter, if Defendants are correct that the Eleventh Amendment prevents Plaintiff from naming "New Hampshire Supreme Court" as a party to suit, the Court should grant Defendant leave to file a Second-Amended Complaint naming the individual

governmental officers instead.[2] As these officers have enforcement capacity to enforce a policy,

order, or custom allegedly in violation of federal law, they are unquestionably proper parties to

suit. *See e.g., Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719 (1980). "[T]he court

and its chief justice were properly held liable in their enforcement capacities. Since the state statute

gives the court independent authority on its own to initiate proceedings against attorneys, the court

and its members were proper defendants in a suit for declaratory and injunctive relief, just as other

enforcement officers and agencies are." *Id.* at *734-737.

### A. The "New Hampshire Supreme Court" Is A Proper Party To Suit Because It Reduces To The Individual NHSC Judicial Officers, Not The State Itself

20.      Nonetheless, Defendants are incorrect because the *Ex Parte Young* doctrine permits

this type of suit against the New Hampshire Supreme Court. *See Ex Parte Young*, 209 U.S. 123

(1908). Plaintiff's allegation[3] that state actors exceeded the scope of their authority under state law

necessarily implies this suit does not conflict with the state's sovereign immunity. Such was the

case in *Young*, where the Minnesota Attorney General was "stripped of his official or

representative character and [was] subjected in his person to the consequences of his individual

conduct." *Id.* at 160, 28 S.Ct. at *454.   "[T]he Eleventh Amendment does not bar an action against

---

[2] As Chief Justice Lynn is retiring on August 23rd, such leave would permit Plaintiff to name successor Chief Justice. Defendant Lynn will lose capacity to comply with injunctive relief on August 23rd. Plaintiff notes his Amended Complaint is therefore properly construed as requesting (1) declaratory, injunctive, monetary relief against Justice Lynn presently, and declaratory and monetary relief exclusively if injunctive relief is not granted before August 23rd, (2) declaratory and injunctive relief against successor Chief Justice, and (3) declaratory and injunctive relief against all individual judicial officers of the "New Hampshire Supreme Court".

[3] *See* Amended Complaint, ¶80, 81. The most bare indication Defendants exceeded their authority is that they failed to make any finding Maravelias's appeal was "frivolous or in bad-faith", a mandatory finding prerequisite to any application of N.H. Supr. Ct. R. 23 by the plain language of the rule. *See Id.*, at ¶81, 90, 91.

a state official that is based on a theory that the officer acted beyond the scope of his statutory authority or, if within that authority, that such authority is unconstitutional." *Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 689, 102 S.Ct. 3304, 3317, 73 L.Ed.2d 1057 (1982). Here, Plaintiff's Amended Complaint separately alleges state officers acted both in excess of statutory authority *ultra vires* <u>and</u> in a manner depriving federal constitutional privileges. He has named the individual Chief Justice of the NHSC to clarify the sought relief conforms to the *Ex Parte Young* doctrine. To the extent that Defendants complain the "state or agency" was also named instead of a rigorous listing of all its constituent individual officers besides Chief Justice Lynn, the Court need not do anything but simply construe the Amended Complaint as against the Justices of the N.H. Supreme Court in their individual capacities. "As petitioner is proceeding pro se in this action, the court must construe the pleadings liberally." *Thomas v. Paul*, No. 16-cv-12-SM, 2017 U.S. Dist. LEXIS 111446 (D.N.H. June 21, 2017). It is customary for plaintiffs to name defendants descriptively by office or group rather than as an exhaustive listing of individuals' first and last names. This is especially true where the exact individual identities are unknown or changing. A notable example is *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). A selection process to fill Chief Justice Lynn's post-August-23rd vacancy is underway in New Hampshire, heightening good cause to retain the current styling of Defendants as "New Hampshire Supreme Court", a state agency to be construed legally as the justices thereof in their individual capacities.

21.     State courts are frequently sued in the context of similar challenges to state court bar admission rules, customarily promulgated and enforced by state supreme courts just as the Amended Complaint alleges Defendants are enacting an illegal application of their own "Rule 23" here. *See e.g. Supreme Court of N.H. v. Piper*, 470 U.S. 274 (1985); *American Trial Lawyers v.*

*N.J. Supreme Court*, 409 U.S. 467 (1973); *Goodrich v. Supreme Court of State of South Dakota*, 511 F.2d 316, 319 (8th Cir. 1975); *Helminski v. Supreme Court of Colorado*, *supra*; *Southern Christian Leadership v. Supreme Court of Louisiana*, 61 F. Supp. 2d 499 (E.D. La. 1999) (recognizing Eleventh Amendment barred state constitutional claims, but not claims under the U.S. Constitution, against state supreme court in federal court); *Mitchell v. Supreme Court of Ohio (In re Mitchell)* (Bankr. N.D. Ohio Mar. 17, 2014); *Alex Pierre v. Supreme Court of Pennsylvania*, No. 18-1592 (3d Cir. 2019); *etc*.

**B.     Even If Naming The "New Hampshire Supreme Court" Equates To Naming A "State Entity" Defendant, The Doctrine of Sovereign Immunity Does Not Prohibit Suit Against New Hampshire In These Particular Circumstances**

      i.     <u>Under New Hampshire State Law, Sovereign Immunity Does Not Apply Where A Plaintiff Challenges A State's Claim To Monetary Property</u>

22.     It is well-established exception to the doctrine of sovereign immunity that the State of New Hampshire may be sued where a plaintiffs acts upon an appropriation of his or her property. "[S]overeign immunity does not apply when the State itself asserts a claim over another's property." *Lorenz v. N.H. Admin. Office of the Courts*, 152 N.H. 632, 883 A.2d 265 (2005) (citing *In re Estate of Raduazo*, 148 N.H. 687, 814 A.2d 147 (2002) at *692). Defendants are alleged to have wrongfully and originally appropriated $4,900.00 of Plaintiff's monetary property. Under New Hampshire state law, its sovereign immunity is therefore waived.

      ii.     <u>Under New Hampshire State Law, Sovereign Immunity Does Not Prohibit Declaratory Relief That A State Rule Is Federally Unconstitutional</u>

23.     Defendants have held:

"When a law is challenged as unconstitutional, the claim is that the law is void and hence that no law has been enacted. It follows that if the legislature has not acted under authority, no action has been taken by the State, and hence when suit is brought to restrain those

representing the State from carrying the void legislation into operation and enforcing it, it
is not a proceeding to which the State is a party."

*Conway v. Water Resources Board*, 89 N.H. 346, 348, 199 A. 83 (1938), at *7.

"Accordingly, where the plaintiffs seek a declaratory judgment that actions taken by the State are
unconstitutional, 'the court has jurisdiction to grant equitable relief.'" *Lorenz*, *supra* (quoting
*Claremont School Dist. v. Governor*, 144 N.H. 590, 593, 761 A.2d 389 (1999)).

24.     Plaintiff's Amended Complaint alleges that Rule 23 itself is facially
unconstitutional and, separately, that Defendants' acts are not even valid executions of Rule 23,
but rather are arbitrary acts performed *ultra vires* instrumentalizing Rule 23 as fake excuse to
violate his federal constitutional rights. Likewise, New Hampshire case law indicates the state is
devoid of sovereign immunity as well in such cases.

### III.    Defendant Robert J. Lynn Voided His Absolute Judicial Immunity

25.     Defendants acknowledge that judicial immunity "is overcome only in cases where
a judge is carrying out a nonjudicial action, or in instances where a judge takes an action, though
seemingly 'judicial in nature,' that is 'in the complete absence of all jurisdiction.'". *Zenon v.
Guzman*, 924 F.3d 611, 617 (1st Cir. 2019) (quoting *Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286
(1991)). Amazingly, Defendant Lynn's conduct was both non-judicial and in the complete absence
of all jurisdiction, even though only one of the two conditions divests of judicial immunity.

26.     Plaintiff repeats and incorporates by reference his argumentation on these two
points *supra*, within the Rooker-Feldman analysis, and separately proffered in his Amended
Complaint, ECF Doc #7 at ¶74 – 81.

## CONCLUSION

27.     Dismissal of the Amended Complaint at this stage is improper. The Rooker-Feldman doctrine is patently inapplicable for multiple independent reasons as a matter of law. Defendants argumentation ubiquitously relies upon rejection of Plaintiff's well-pleaded non-conclusory factual stipulations. At a minimum, discovery is needed to adduce any merit to Defendants' claims to sovereign and absolute judicial immunity.

28.     No separate memorandum of law is required in support of this objection as all relevant legal authority relied upon is cited herein. *See* LR 7.1(a)(2).

WHEREFORE, Plaintiff Paul Maravelias respectfully requests this Honorable Court:

A.     Deny the Defendants' 7/1/19 Motion to Dismiss Amended Complaint;

B.     Hold a Hearing on this matter; and

C.     Grant any further relief as may be deemed just and proper.

Dated: July 15th, 2019                          Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

/s/ Paul J. Maravelias, *pro se*

**Paul J. Maravelias**
34 Mockingbird Hill Rd
Windham, NH 03087
paul@paulmarv.com
603-475-3305

## <u>CERTIFICATE OF SERVICE</u>

I, Paul Maravelias, certify that a timely provided copy of this document is being sent on this date to counsel of record for the Defendants pursuant to the rules of this Court.

/s/ Paul J. Maravelias                                    Dated: July 15th, 2019
**Paul J. Maravelias**