## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

PAUL MARAVELIAS,                          )          Civil No. 1:19-CV-00487(JL)
                                      )
                     *Plaintiff,*          )
                                      )
   v.                              )
                                      )
JUSTICES OF THE SUPREME COURT OF NEW      )
HAMPSHIRE, et al.                         )
                                      )
                    *Defendants*.        )
                                      )

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION
### TO THE ATTORNEY GENERAL'S MOTION TO DISMISS

NOW COMES Paul Maravelias ("Plaintiff") and submits the within Memorandum in Support of his Opposition to the Attorney General's 3/6/20 Motion to Dismiss and Memorandum in Support (ECF Docs #19, #19-1).

### ARGUMENT

**I.**    **The Attorney General Is a Proper Party to Suit**

1.    The Complaint[1] alleges the Attorney General has standing to enforce Rule 23 against Maravelias. *Id*. at ¶8, ¶21. The Attorney General nonetheless seeks to be dismissed because the Complaint does not allege he has already violated Maravelias's rights. ECF Doc #19-1 at 3.

2.    The Attorney General has omitted crucial context to his statement, "[t]o state a viable constitutional claim under § 1983, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' *Ashcroft*

---

[1] "Complaint" hereinafter refers to Plaintiff's second amended complaint (ECF Doc #12).

*v. Iqbal*, 556 U.S. 662, 676 (2009)." This quote from *Ashcroft* appeared in the context of the *respondeat superior* doctrine and vicarious liability within a § 1983 suit for money damages. Such a context is entirely different from that of §1983 suits for declaratory relief or prospective injunctive relief. It is inapplicable to this case where plaintiff, seeking no monetary damages against any party, need only allege the named governmental actor may likely violate his rights in the future by enforcing a law, custom, policy, or practice in violation of the constitution.

3.      The remainder of the Attorney General's argument to this point is self-defeated by his own assertion that he believes "it would be lawful for [him] to prosecute Maravelias for contempt of the attorney's fees order even if this Court later invalidated Rule 23." ECF Doc #19-1 at *6. The Attorney General threatens an enforcement action in his very memorandum, even though he cannot point to a single state court order commanding Maravelias to pay anyone, which is distinguishable from a civil money judgment that was merely "awarded" against him.[2]

4.      The Complaint alleges facts and circumstances showing why Maravelias is likely to suffer a future enactment of the unconstitutional Rule 23. <u>Complaint</u> at ¶14 – ¶20. The Attorney General has confessed himself the enforcer of said anticipated actions in his own memorandum. Accordingly, Maravelias has established standing with respect to the Attorney General to obtain declaratory relief adjudging said rule unconstitutional. *Cf. Am. Postal Workers Union v. Frank*, 968 F.2d 1373 (1st Cir. 1992) (allegation of past injury alone insufficient to create standing for

---

[2] In the U.S.C. §1983 context, obtaining declaratory relief against an unconstitutional state custom as an antecedent to – and likely deterrent for – subsequent action for injunctive relief, is within the functional scope of the statute. "[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation …" *Aldrich v. Young*, 2013 U.S. Dist. LEXIS 100433, 2013 WL 3802436, at *9 (D. Mass. 2013) (internal quotation omitted) (quoting *Abebe v. Seymour*, 2012 U.S. Dist. LEXIS 47589, 2012 WL 1130667, at *3 (D.S.C. 2012)).

equitable relief). "[P]ast exposure to harm will not, in and of itself, confer standing upon a litigant to obtain equitable relief 'absent a sufficient likelihood that he will again be wronged in a similar way.'" *Id*. at *1376 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 111, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983)).

## II.   Maravelias Has Stated Viable Constitutional Claims[3]

5.      At the outset, Maravelias reiterates the significance of his allegation that Rule 23 does not "tether the procedural application … to standard motion practice" as do comparable state supreme court rules of other states regarding sanctions for frivolous conduct. Complaint at ¶38. This allegation is significant because the sufficient due process for such a sanction ordinarily follows two stages: 1) the request for the sanction itself (conventionally bearing the title "motion"), and 2) if granted, the subsequent filing an itemization affidavit tabulating the amount of attorney's fees to be paid (implicitly not bearing the title of "motion"). This biphasic procedure is commonplace in American courts; parties seeking attorney fee sanctions do not normally specify the amount sought before prevailing on the threshold award.[4]   A defendant must have a defined right to an opportunity to be heard at both stages: to rebut the sanction request on its merits and to rebut the subsequent itemization if the former fails. Without a provision specifying Rule 23

---

[3] The Attorney General's Rule 12(b)(6) motion relies upon resolution in his favor of genuine issues of factual dispute to rebut Maravelias's constitutional claims, such as the nature of the past Rule 23 application against Maravelias himself, of Rule 23's level of intelligibility to the average person, and of such person's level of ability to familiarize himself with how the New Hampshire Supreme Court ("NHSC") implements Rule 23. These questions exceed, at least in part, the scope of judicial notice at this stage. Maravelias deserves the benefit of discovery to substantiate factual grounds rebutting the Attorney General's such arguments at summary judgment.

[4] *See e.g.*, *Doyle v. United States*, 817 F.2d 1235 (5th Cir. 1987); *In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990) ("The determination of the type or amount of the sanction imposed comes only after the offending party has had an opportunity to defend against the imposition of any sanction."); *Roger Edwards, LLC v. Fiddes & Son, Ltd.*, 437 F.3d 140 (1st Cir. 2006).

requests are sought through motion practice, a Rule 23 defendant does not have a defined right even to file an objection to the initial request for a sanction. *See* <u>N.H. Sup. Ct. R</u>. 21(3) (only permitting an objection to be filed against "a motion"). Motion practice clarifies the duration of time in which a defendant may to object before the court can act. *Id*. Further, a reasonable Rule 23 defendant of ordinary intelligence has no reason to believe he is – nor actually is – guaranteed the right to file an "objection" to a subsequent affidavit itemizing attorney's fees where not specifically invited to do so by order of the NHSC.

### A.    Fourteenth Amendment Procedural Due-Process (Claim 1)

6.      Paragraphs ¶35 – 46 of the Complaint assert twelve (12) distinct, colorable legal theories why Rule 23 violates procedural due-process rights on its face. The Attorney General predominately confines his argumentation to rebutting solely that of Paragraphs ¶38, ¶40, and ¶41: whether Rule 23 guarantees opportunity to be heard by connection to standard motion practice (¶38) and the sufficiency of notice of the alleged bad-acts (¶40) and of the sanction sought (¶41).

       i.      <u>Rule 23 Invokes First Amendment Principles Relaxing The Ordinary Requirement to Demonstrate It Lacks Any Plainly Legitimate Sweep.</u>

7.      The Attorney General has omitted an important qualification to his assertion that "[t]o sustain a facial attack on a state law, a plaintiff must at minimum demonstrate that the law 'lacks any plainly legitimate sweep.'" (quoting *Hightower v. City of Boston*., 693 F.3d 61, 77 (1st Cir. 2012). This requirement applies to constitutional claims brought under the Second Amendment such as *Hightower*, but when an alleged unconstitutional rule lacking sufficient procedural due process also implicates First Amendment rights, a relaxed standard applies. "In the First Amendment context, however, this Court recognizes 'a second type of facial challenge,' whereby a law may be invalidated as overbroad if 'a substantial number of its applications are

unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n. 6, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008)).

8.      *Hightower*, therefore, needed to demonstrate the Massachusetts firearms licensing statute in question "lacked any plainly legitimate sweep" to sustain her facial attack. *Id*. But NHSC Rule 23 implicates the First Amendment because it punishes citizens for making use of their only appellate court. "[T]he Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, et al. v. Guarnieri*, 564 U.S. 379 (2011). As such, Rule 23 must only be shown to be unconstitutional in "a substantial number of its applications" to be invalidated, even if having a "plainly legitimate sweep". *Stevens*, 559 U.S. at *473.

9.      This doctrine squarely applies to facial challenges against state rules or laws such as NHSC Rule 23 to mitigate "the threat [that] enforcement of an overbroad law [will] dete[r] people from engaging in constitutionally protected speech", in this case, from accessing their state's only appellate court for fear of a Rule 23 sanction. *Stevens*, 559 U.S. at *485 (quoting *United States v. Williams*, 553 U.S. 28). In other words, *Hightower* is inapplicable to Maravelias's facial challenges against NHSC Rule 23 because Rule 23 is not a firearms licensing provision lacking any speech regulation or suppression component, as was the Massachusetts statute subject to Hightower's facial challenge. Rather, Rule 23 cuts straight to the core of New Hampshire citizens' First Amendment right to petition the government for redress and to make use of only their state appellate court for legal remedies. Accordingly, Maravelias need only demonstrate that

Rule 23 lacks procedural due process protections such that a "substantial number" of its applications are unconstitutional.

        ii.   <u>Regardless, Maravelias Has Demonstrated Rule 23 Lacks Any Plainly Legitimate Sweep.</u>

10.    Even adopting the inapplicable, rigorous standard in *Hightower*, the Complaint is still susceptible to a reading that demonstrates Rule 23 "lacks any plainly legitimate sweep".

11.    The Complaint alleges Rule 23 does not have any plainly legitimate sweep because it alleges Rule 23 far exceeds a narrowly tailored state court rule for sanctions to deter frivolous conduct with fair notice, opportunity to heard, temporal limitations, and equitable correspondence of penalty to the misconduct punished. *See* <u>Complaint</u> at ¶48 – 49, comparing <u>Ohio S.Ct. Prac. R. 4.03(A)</u> to <u>N.H. Supr. Ct. R.</u> 23. The Complaint credibly alleges Rule 23's sweep is too far-reaching and not legitimate because, *e.g.*, unlike other analogous rules from other jurisdiction:

- It does not "constrai[n] all sanctions to 'appropriate' sanctions and the attorney's fees sanction to 'reasonable' attorney's fees, denoting an equitable and direct causal correspondence between the nature of the prohibited conduct and the punitive reimbursement of attorney's fees as a result thereof" (leading to a situation where it can be deployed in excess amounts arbitrarily, capriciously, and in retaliation with no recourse). <u>Complaint</u> at ¶49; *see also* ¶45, ¶46, ¶52, ¶57.

- It imposes no temporal limitation and leaves open an eternal potentiality of having to defend against a post-mandate Rule 23 action which can be brought at any future time, outside the scope of the statutory statute of limitations on regular criminal (RSA 625:8) or civil actions (RSA 508) (leading to substantial injustice and a chilling effect disproportionately deterring citizens less financially able to cope with a Rule 23 monetary judgment against them from using their state's appellate court). <u>Complaint</u> at ¶42 – ¶44.

- It does not "prohibit[t] well-defined objective categories of conduct [offering] a definition of the prohibited objective conduct". <u>Complaint</u> at ¶49; *see also* ¶53, ¶58.

- It allows for punishment by award of attorney's fees for an entire appeal case in response to the filing of one single frivolous or bad-faith pleading in a case which itself is not frivolous or in bad faith, and thus allows for a penalty disproportionate to the offense. <u>Complaint</u> at ¶45 – ¶46, ¶57 – ¶58.

- It does not, as the Attorney General admits, require Rule 23 sanctions to be brought in "regular motion practice and thus appl[y] all related procedural rules, protections, and standards inherent to routine … motion practice". <u>Complaint</u> at ¶49; *see also* ¶38.

12.    A state court rule shown to have this many objective, independent, and atypical departures from a plainly legitimate sweep – at stark contrast to other such analogous court rules – cannot be said to have one. The United States Supreme Court has held there is a "strong presumption … against the imposition of sanctions for invoking the processes of the law" in order not to stifle "open access to all levels of the judicial system". *Talamini v. Allstate Ins. Co.*, 470 U.S. 1067, 1071 (1985). At the very least, these unusual flaws above show Rule 23 lacks narrow-tailoring and can be unconstitutional in a "substantial number of its applications". This is all Plaintiff's Complaint must show is plausible to survive a Rule 12(b)(6) motion.

       iii.    <u>The Attorney General Has Not Shown Rule 23 Does Not Lack Any Plainly Legitimate Sweep</u>

13.    The Attorney General seems to address only the last infirmity enumerated above relating to Rule 23's silence on how such a sanction is initiated, not guaranteeing the procedural due process protections of regular motion practice. He argues, "[t]he New Hampshire Supreme Court's prior applications of Rule 23 and the circumstances of Maravelias's own case demonstrate that Rule 23 has a plainly legitimate sweep". ECF Doc #19-1 at *9.

14.     This argument is without merit. To show some lawful sanctions in the past have occurred merely <u>in the name</u> of a rule does not disprove that said rule lacks a plainly legitimate sweep. *See Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991) (recognizing distinction between invocation of court rule to issue sanctions and issuing such sanctions for frivolous conduct as part of court's inherent powers and not based in a court rule).[5]

15.     The Attorney General spuriously references[6] Maravelias's superseded "prior filings" to argue a past Rule 23 sanction against Maravelias complied with procedural due process. This inquiry is not relevant to a purely facial challenge. However, even if it were, Maravelias had contrarily alleged said "award" "was not actually an application of Rule 23" because, *inter alia*, the NHSC failed to find that he appeal in question was "frivolous or in bad faith" and failed to "follow the implicit due process requirements said Rule 23 must obey". <u>First Amended Complaint</u> at ¶81. Under the *Chambers* distinction, his "prior filings" were not challenging Rule 23 itself but rather challenging the constitutionality of the NHSC's inherent powers to issue sanctions as-applied to Maravelias in an order he alleged falsely purported to have been under Rule 23. If the Attorney General wishes to contest a facial challenge by alleging the constitutionality of a particular past sanction allegedly deriving force in Rule 23, he must file an Answer to Maravelias's

---

[5] The Attorney General does not allege the Rule 23 example cases he cites used the same historical version of Rule 23 nor demonstrates in each instance that they are even applications of Rule 23 rather than applications of a court's inherent power to issue custom-tailored equitable sanctions outside the strictures of a normal court rule if justice so requires, as recognized in *Chambers*.

[6] "An amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader." *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003).

Complaint so that Maravelias will have an opportunity to engage in discovery and file a motion for summary judgment resolving this argument.

16.     The Attorney General cannot overcome a facial challenge by cherry-picking a few cases and arguing that Rule 23 was constitutional as-applied therein – a task he has not even accomplished beyond pointing-out motion practice was used in some cases. He does not explain why these applications of Rule 23 were not unconstitutional as-applied under Maravelias's other theories. In *Stevens,* the United States Supreme Court rejected a similar argument to the Attorney General's here. In *Stevens*, the government emphasized it had brought and would continue to bring prosecutions under an overbroad statute prohibiting depictions of animal cruelty only in "extreme" cases. *Stevens*, 559 U.S. at *480. The Court rejected this argument and "would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *Id*. Accordingly, a cherry-picking of past allegedly constitutional sanctions which allegedly derived their force in Rule 23 does not defeat a facial constitutional challenge against said rule if the multiple distinct theories why it violates procedural due process are otherwise valid.

17.     Indulging *arguendo* that a facially unconstitutional rule can be remedied by the existence of procedural protections clarified in fickle case law rather than in the language of the rule itself (discussed extensively *infra*), the Attorney General has not supported his claim "the [NHSC] has consistently required that requests for attorney's fees under Rule 23 be made through motion practice". ECF Doc #19-1 at *9. In support, he cites his preceding footnote identifying some cases in which the NHSC <u>alluded</u> or <u>reacted</u> to, but never <u>required</u>, Rule 23 sanctions as initiated by motion of the prevailing party. One such case the Attorney General cites as "requir[ing] that requests for attorney's fees under Rule 23 be made through motion practice" is *Claremont*

*Sch. Dist. v. Governor*, 143 N.H. 154, 160 (1998). But no such "requirement" was decided in *Claremont,* where the NHSC granted a motion for taxation of costs and took the question of attorney's fees under advisement pending further order.[7] Further, since the NHSC has never definitively decided to require such practice, any negative examples as procedural "housekeeping" appendages to an opinion deciding distinct legal questions would constitute non-precedential *obiter dictum. See Dedham Water Co. v. Cumberland Farms Dairy*, 972 F.2d 453 (1st Cir. 1992).

18.     In fact, the Attorney General has candidly admitted the NHSC has invoked Rule 23 *sua sponte*, in his words, to "awar[d] attorney's fees 'based on the record' [alone] without any reference to a separately filed motion". ECF Doc #19-1 at *8, citing *Am. Express Travel v. Moskoff*, 148 N.H. 446, 453 (2002). This strengthens Maravelias's facial challenge because all New Hampshire litigants considering appeal must assume the risk of unilateral punishment dispensed by their only appellate court even if otherwise assured their dispute was in good-faith and that the opposing party would not file such a request themselves. This furthers Rule 23's chilling-effect against usage of appellate remedy.[8] *See* <u>Complaint</u> at ¶44, ¶62.

19.     Moreover, Rule 23's failure to include relatively conventional words to the effect of "on a motion by a prevailing party or on the court's own initiative" permits the unconstitutional practice of Rule 23 sanctions to be requested in a passing reference in an appellate brief rather than

---

[7] The Attorney General cites an assortment of other NHSC orders, non-precedential pursuant to <u>N.H. Sup. Ct. R.</u> 20(2), which do not contain any decision confining Rule 23 sanction procedure to a motion by the opposing party.

[8] To be sure, the Complaint does not allege a state appellate court does not have inherent power to issue such equitable relief *sua sponte* when justice requires. Rather, it alleges the failure of Rule 23 to specify the scope and provenance of Rule 23 sanctions – such as by requiring a separate motion filed by the opposing party – violates due process. *See* <u>Complaint</u> at ¶38.

in a separate, proper motion. This compromises a Rule 23 defendant's opportunity to respond, depending on allowable word count of any further responsive brief if one is even allowed at all (*see* N.H. Sup. Ct. R. 16.) and has been held as insufficient notice. *Cf.* Fed. R. App. Proc. 38 (expressly forbidding the practice) "A statement inserted in a party's brief that the party moves for sanctions is not sufficient notice." Fed. R. App. P. 38, Advisory Comm. Notes to 1994 Amendments. This omission in Rule 23 is particularly contemptuous of due process rights because the New Hampshire Supreme Court Rules do not contain any separate provision that "[f]ilers shall not combine multiple motions seeking separate and distinct relief into a single filing … [s]eparate motions must be filed". N.H. Super. Ct. R. (*nota bene*: N.H. Superior Court Rule) 7(g). *Cf.* N.H. Sup. Ct. R. 21 "Motions, Brief Memoranda, and Extensions of Time" (containing no such provision). Even worse, it appears the NHSC has entertained such improper non-motion "requests" for Rule 23 sanctions not made within a separate post-disposition motion.[9]

       iv.    *Hightower* Does Not Broadly Assert Lawful Prior Application Precludes Any Subsequent Facial Challenge.

20.    The Attorney General makes an assumption about Maravelias's particular Rule 23 injury in a past case and claims "[t]he First Circuit has held that a plaintiff cannot sustain a facial attack on a state law when the plaintiff's own circumstances reveal a constitutional application of that law", citing *Hightower* as support. ECF Doc #19-1 at *10. The Attorney General is incorrect. *Hightower* is distinguishable in this regard because Hightower was challenging the constitutionality of a Massachusetts law by which her firearms license was denied as a result of

---

[9] *See e.g.*, *Indian Head National Bank v. George D. Corey & a.*, 129 N.H. 83 (1986); *State v. Rollins*, 129 N.H. 684 (1987); *A&B Lumber Co., LLC v. Hoppe*, No. 2006-0444, 2007 WL 9619472, at *2 (N.H. Oct. 11, 2007).

her act of giving false information on an application form. It was the unique presence of this falsification which the First Circuit held deprived Hightower of an ability to proceed with a facial challenge in connection with the same matter. There is no such aspect in this case. The Attorney General has not alleged that Maravelias committed a criminal act of falsification as part of conduct leading to a past application of the facially challenged statute as in *Hightower*.

21.     Furthermore, the existence in *Hightower* of a clearly constitutional application (because of her providing false information) was fatal to her facial challenge only because, there, she needed to show the statute "lack[ed] any plainly legitimate sweep". As explained *supra*, the instant case differs from *Hightower* in that Rule 23 involves First Amendment interests and thus invokes the relaxed overbreadth doctrine, where a showing of one single constitutional application does not automatically foil a facial constitutional challenge.

v.     <u>Plaintiff's Legal Questions Do Not Warrant Exercise of *Pullman*</u>
<u>Abstention Nor Certification to State Court.</u>

22.     The Attorney General makes a passing reference to certain circumstances where federal courts may abstain from deciding claims in state law or certify them to the state court. He has not brought a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) to give Plaintiff a full and fair opportunity to counterargue such a motion. This court has jurisdiction over all claims presented. Maravelias does not seek any relief under the NH Constitution nor under any state law. <u>Complaint</u> at *18. Rule 23 speaks for itself and its ambiguous terms are unambiguously ambiguous. The facial challenge herein is a question of federal law. "[F]ederal courts need not abstain on <u>Pullman</u> grounds when a state statute is not 'fairly subject to an interpretation which will render unnecessary' adjudication of the federal constitutional question." *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236, 104 S. Ct. 2321, 2327 (1984) (internal quotation

12

omitted). Further, in the unique situation of a challenge to a state supreme court rule, Individual Justice defendants themselves cannot adjudicate the very claims brought against them. "Initially, as a practical matter, because the highest court in Colorado is the promulgator of the rule and a party of this action, requiring the plaintiff to bring his case in state court first would be an apparent exercise in futility." *Helminski v. Supreme Court of Colorado*, 603 F. Supp. 401 (D. Colo. 1985).

vi.     <u>The Attorney General Has Left Uncontested Multiple Compelling Theories Supporting Plaintiff's Claim 1 Against Rule 23.</u>

23.     The Attorney General correctly points out that "[n]otice and an opportunity to be heard have traditionally and consistently been held to be the essential requisites of procedural due process". *Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56, 66 (1st Cir. 2019). However, he has not shown there is no possible set of circumstances where the Complaint could succeed to show Rule 23 lacks constitutionally sufficient provisions for notice and opportunity to be heard. If the Attorney General is correct that the mere existence of NHSC orders referencing motion practice as a means of initiating a Rule 23 sanction defeats constitutional concerns from the lack of such requirements in the rule itself, this would only arguably warrant dismissal of the procedural due process claim at <u>Complaint</u>, ¶38. Rule 23's distinct due process infirmities enumerated in detail at <u>Complaint</u>, ¶35 – 46 are sufficiently, distinctly demonstrated therein.

**B.**     **Unconstitutional Vagueness (Claim 2)**

i.     <u>First Amendment Review Applies Where Rule 23 Implicates The Public Right to Petition and Open Access to Courts.</u>

24.     For the reasons stated above and in Complaint ¶61 – ¶63, Rule 23 involves First Amendment interests. "Creating a risk that the invocation of the judicial process may give rise to punitive sanctions simply because the litigant's claim is unmeritorious could only deter the

13

legitimate exercise of the <u>right to seek a peaceful redress of grievances through judicial means</u>."

*Talamini*, 470 U.S. at *1071. (emphasis added) (holding court rules similar to Rule 23 concern the defined First Amendment Right to Petition). Consequently, the unconstitutional vagueness challenge here is incomparable to one brought against statutes not implicating First Amendment rights. The Court should thus construe Claim 2 under the First Amendment and in relation to substantively identical Claim 3, explicitly designated as originating under the First Amendment.[10]

25.     Rule 23 must therefore regulate prohibited conduct with narrow specificity under the heightened First Amendment vagueness standard. "'[A] more stringent vagueness test should apply'" when "a law burdens First Amendment rights". *Nat'l Org. for Marriage, Inc. v. McKee*, 669 F.3d 34, 44 (1st Cir. 2012) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 130 S. Ct. 2705, 2719 (2010)). "The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions. … Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963).

> ii.     <u>Rule 23 Itself Must "Explicitly" Inform a Person of Ordinary Intelligence of The Prohibited Conduct Without Elaborate Interpretation of Case Law</u>

26.     The Attorney General reminds "a state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975). This case is similar to *Erznozik* (Florida local ordinance

---

[10] Insofar as *pro se* Maravelias unartfully managed the classification and arrangement of headings in his Complaint, he has nonetheless satisfied the liberal notice pleading requirements of Rule 8. "[P]ro se pleadings are to be liberally construed, in favor of the pro se party". *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 15 (1st Cir. 1990).

invalidated as facially unconstitutional) because Rule 23's "plain terms [are] not easily susceptible of a narrowing construction" as demonstrated *infra*. *Id*., 422 U.S. at *216. But as a threshold objection to the Attorney General's argument that the NHSC has interpreted Rule 23 "in light of the trial court standard for bad faith litigation" defined in *Kukene v. Genualdo*, 145 N.H. (2000) and has thus provided a constitutional limiting construction curing facial vagueness, Maravelias notes the difference between a state criminal statute (as in *Erznozik*) and a civil court rule.

27.     The Attorney General admits the vagueness challenge requires the Court to determine whether "the law provides <u>explicit</u> standards <u>for those who apply it</u>". *Nat'l Org. for Marriage, Inc.*, 669 F.3d at *44. (Emphasis added). Ordinarily, "a court can impute to a person of common intelligence knowledge of any limiting construction of the statute that a state court or enforcement agency has proffered". *Government Suppliers Consolidating Services, Inc. v. Bayh*, 133 F.R.D. 531, 540 (S.D. Ind. 1990) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972)). Therefore, a judicially created limiting construction may be acceptable to cure the vagueness of a state <u>criminal</u> statute 1) because the expectation to know this case law is additionally imputed to <u>trained legal prosecutors regulated by the state bar</u> ("those who [exercise discretion to] <u>apply it</u>") in the criminal context and 2) because the rule of lenity in criminal prosecutions forces the narrowest construction. But Rule 23 is a civil court rule equally applicable against one non-expert *pro se* opponent by another inside an appeal case where no civil analogue to the rule of lenity bounds the NHSC to grant Rule 23 sanctions in the most narrow fashion possible within its potential range of meanings. Therefore, *pro se* NHSC litigants of ordinary intelligence are entitled to be informed by the "<u>explicit</u>" language of Rule 23 itself of

prohibited conduct. "[A] person of common intelligence is not charged with omniscient knowledge of all extrinsic sources of information about a statute." *Government Suppliers*, *supra*, at *541.

28.     There is a second reason why a person of ordinary intelligence cannot be expected to scrutinize NHSC case law, beyond solely reading the plain language of Rule 23, to understand what conduct it prohibits. As of early 2018, the NHSC has been ominously concealing and self-censoring its final dispositions on the merits of non-confidential unsealed civil domestic violence and stalking restraining order appeals from publication anywhere, including LexisNexis or Westlaw, and even from the public website where all other such non-precedential "Other Final Orders" are published.[11] These cases are particularly likely to involve hostility and requests for Rule 23 sanctions. Maravelias stipulates, pursuant to the doctrine of judicial notice, that the NHSC has kept secret its oft-elaborate final dispositions in a plethora of recent such cases.[12] A state supreme court making it near-impossible for lawyers and citizens to know what it is doing, engaging in such shady and totally illegal practices of self-censorship, cannot expect an "ordinary person" to acquire extrinsic legal understanding beyond the plain language of Rule 23. *Accord Government Suppliers*, 133 F.R.D. at *541 (distinguishing between "public" and "secret" extrinsic knowledge in context of limiting construction of facial challenge to state statute). "[I]f the statute

---

[11] https://www.courts.state.nh.us/supreme/finalorders/index.htm

[12] *Viz.*, *inter alia*, #2018-0199, Lisa Bailey v. Brendan Poelaert; #2017-0698, Brittany Hession v. Blake Douglass; #2017-0709, Jamie Dolpies v. Melissa Christoforo; #2018-0049, Maria Schirduan v. Paul Schirduan; #2018-0200, Katlyn Robitaille v. Dana Beaulieu; #2018-0248, Sanjeev Lath v. Robert Surprenant; #2018-0263, Diana Paquet v. Joseph Paquet; #2018-0325, Gary Cote v. Justin Douglas; #2018-0343, Abigail Hidden v. James Hidden; #2018-0470, Aisling Anderson v. Matthew Hutnick; #2018-0571, Brianna McKenzie v. Joseph McGrath; #2019-0259, Donna Pelliccia v. Brandon Roy; #2019-0074, Harlee O'Dell v. Bradley Kenerson, Sr.; #2019-0370, Linda Knowles v. John Fiumara.

is unconstitutionally vague, it is because the text itself is vague and the *public* extrinsic evidence available to the person of common intelligence does not adequately clarify … the statute." *Id*.

29.     Regardless, Maravelias's vagueness claim still survives even if a judicially created limiting construction in case law is held to insulate an otherwise vague civil court rule from a facial challenge: because there simply does not exist any such valid limiting construction of Rule 23.

        iii.    <u>*Kukene v. Genualdo* Does Not Provide a Limiting Construction for Rule 23</u><br>            <u>To Define The Term "Bad Faith"</u>

30.     Contrary to the Attorney General's apparent assertion, the NHSC has never held the standard for a Rule 23 award of appellate attorney's fees is the same "standard applied when determining whether an award of attorney's fees is warranted at the trial court level" (*i.e.*, the standard defined in *Kukene* or its oft-cited predecessor *Harkeem v. Adams*, 117 N.H. 687 (1977)). ECF Doc #19-1 at *12. The three cases he cites in support are spurious. They flatly do not support his quoted proposition. *Arcidi v. Town of Rye*, 150 N.H. 694, 704-05 (2004) (reversing an appealed <u>trial court</u> award of attorney's fees with no Rule 23 request present on appeal); *Burrows v. City of Keene*, 121 N.H. 590 (1981) (cited by *Arcidi* as distinguishable; awarding appellate attorney's fees under Rule 23 against the government, and <u>additionally</u> remanding for "additional reasonable counsel fees and costs [incurred subsequently] <u>at the trial level</u>" unrelated to the Rule 23 sanction); *State v. Rollins*, 129 N.H. 684, 688 (1987) (not interpolating any standard from case law on trial court attorney's fees to the Rule 23 context, and denying Rule 23 request); *Indian Head National Bank v. George D. Corey & a.*, 129 N.H. 83 (1986) (affirming an underlying trial court award of fees under *Harkeem* and merely <u>observing</u> in non-precedential *obiter dictum*, while granting an additional award of Rule 23 appellate fees, that "the appeal was frivolous and an act of bad faith

in the sense used in *Harkeem*"; not anywhere holding standards on trial court level attorney's fees are the binding calculus for Rule 23 awards).

31.     And while *Indian Head* is the closest example of Rule 23's standard appearing in happenstance linguistic proximity to the different standard applicable to trial court awards of attorney's fees in frivolous actions, a majority of Rule 23 adjudications by the NHSC make no reference whatsoever to the different trial court level standard nor to the case law on it. *See e.g.*, *Am. Express Travel v. Moskoff*, 148 N.H. 446, 453 (2002); *A&B Lumber Company, LLC v. Henry Hoppe & a.* No. 2006-0444, 2007 WL 9619472, at \*2 (N.H. Oct. 11, 2007); *et cetera*.

32.     The NHSC has in fact recognized the opposite: that attorney's fees issued pursuant to a "court rule" (such as Rule 23) are separate and distinguishable from those issued pursuant to "an established [judicial] exception to the rule that each party is responsible for paying his or her own counsel fees" such as specified in *Kukene* or *Harkeem*. *LaMontagne Builders, Inc. v. Brooks*, 154 N.H. 252, 259, 910 A.2d 1162, 1168 (2006) (reversing superior court's application of Rule 23 fee award for previous supreme court appeal while affirming separate trial court fee award under the distinct trial court level standards). *See also Branch Banking & Tr. Co. v. Duclair*, No. 2015-0545, 2016 WL 3748584, at \*1 (N.H. May 2, 2016).

      iv.     <u>*Kukene* Would Further Rule 23's Unconstitutional Vagueness If Held To Be a Limiting Construction for The Term "Bad Faith".</u>

33.     Maravelias has exhaustively shown above *Kukene* does not provide the constitutional limiting construction for Rule 23 the Attorney General claims it does on Page 12 of his Memorandum. But even if it did, it would only bolster Maravelias's vagueness claim at <u>Complaint</u> ¶53 – 54 that "the term 'bad faith' is inherently vague, ill-defined, and subjective". *Id.*

34. <u>First</u>, *Kukene* synonymizes the terms "bad faith" and "frivolous" in a way impossible to reconcile with the plain language of Rule 23 that sanctions might be imposed "if the appeal is deemed by the court to have been frivolous <u>or</u> in bad faith." (Emphasis added) "A party pursues a claim in bad faith if the claim is frivolous." *Kukene*, 145 N.H. at *3. A person of ordinary intelligence reading the words "frivolous or in bad faith" would surmise that there is some prohibited conduct of filing a non-frivolous appeal in bad faith because the word "or" indicates the two terms are not synonyms. But *Kukene*'s synonymizing these terms would suggest filing a non-frivolous appeal for harassment purposes is not prohibited conduct.

35. <u>Second</u>, *Kukene* further mystifies the semantic range of "bad faith" conduct by distinguishing "bad faith" with "oppressive, vexatious, arbitrary, capricious" conduct. "Attorney's fees may be awarded where litigation is instituted or unnecessarily prolonged through a party's oppressive, vexatious, arbitrary, capricious or bad faith conduct". *Id*. (Internal citation omitted). But an insurance company non-frivolously appealing a judgement awarded to a poor, sick, elderly widow might be "oppressive" without being "frivolous or in bad faith". It is vague whether "bad faith" in Rule 23 might entail "oppressive" pursuant to the interpretational canon *noscitur a sociis*, or whether the hypothetical insurance company is allowed to bring an "oppressive" non-frivolous appeal in which case *Kukene* is most certainly inapposite to Rule 23.

36. <u>Third</u>, *Kukene* upends the common English understanding of "bad faith" by 1) distinguishing it from "oppressive, vexatious, arbitrary, capricious" conduct (which an ordinary person would consider "bad faith") and 2) synonymizing it with the specialized legal definition of "frivolity", when most individuals would think "bad faith" refers to a mental state. It is therefore unclear whether a well-meaning state court appellant can consider themselves safe from Rule 23

sanctions if they believe their claims are non-frivolous. The word "bad faith" is therefore "so uncertain that persons of average intelligence would have no choice but to guess at its meaning and modes of application" and unconstitutionally vague, whether *Kukene* is held to provide a limiting construction or not. *United States v. Councilman*, 418 F.3d 67, 84 (1st Cir. 2005). *Cf. e.g.*, N.H. Sup. Ct. R. 23 ("deemed … to have been frivolous or in bad faith") *with* Ohio S.Ct. Prac. R. 4.03 ("determines that an appeal or other action is frivolous or is prosecuted for delay, harassment, or any other improper purpose") (comparative emphasis added).

> v.   Even If *Kukene* Provided a Non-Vague Limiting Construction for "Bad Faith", Rule 23's Unconstitutional Vagueness Remains Elsewhere

37.   The Attorney General passingly addresses the term "bad faith" but sidesteps the bulk of Maravelias's theories within his vagueness challenge. *See* Complaint at ¶52, ¶55 – ¶58. Maravelias has stated these distinct, colorable theories under the unconstitutional vagueness doctrine and deserves an opportunity to prove them. These additional aspects of vagueness, the indiscernible term "bad faith", and the lack of any limiting construction for Rule 23 altogether portray an unconstitutionally vague civil court rule failing to give "persons of ordinary intelligence have 'fair warning' of what [it] prohibits". *Nat'l Org. for Marriage, Inc.*, 669 F.3d at *44.

> vi.   The Language of Rule 23 Encourages Arbitrary Enforcement

38.   The Attorney General has argued Rule 23 "is sufficiently certain that a person of ordinary intelligence would know what the rule prohibits" (ECF Doc #19-1 at *13), refuted hereinabove, yet has disregarded the second grounds under which the Complaint alleges Rule 23 may be invalidated for unconstitutional vagueness. "A statute can be impermissibly vague … if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703 (2000). *See* Complaint at ¶52. Under Rule 23, a sinister prevailing party could exploit

the ambiguity of the words "fees related to an appeal" by requesting an unspecified Rule 23 attorney's fees award citing the existence of one or more frivolous pleadings within an otherwise non-frivolous appeal, and afterwards enumerate attorney's fees incurred for the entire appeal. Noticeably absent from Rule 23 is the limiting adjective "reasonable" attorney's fees found in virtually all other analogous court rules. *See e.g.* <u>Fed R. Civ. Proc.</u> 11(c)(4) ("reasonable attorney's fees and other expenses directly resulting from the violation"); <u>Ohio S.Ct. Prac. R.</u> 4.03 ("reasonable attorney fees"). The ambiguity of the term "fees <u>related</u> to an appeal" in the absence of any "reasonable" qualifier is legally significant[13] and also bolsters Plaintiff's Claim 1.

39.     Furthermore, although Plaintiff need only show Rule 23 "authorizes or even encourages arbitrary and discriminatory enforcement" in theory, the NHSC's documented conduct indicates a present reality of "arbitrary and discriminatory enforcement". For instance, sometimes the NHSC feels like explicitly permitting a Rule 23 sanctionee 10 days to oppose the movant's itemization of fees[14], yet at other times it does not.[15] Sometimes the NHSC feels like entertaining passing requests for Rule 23 sanctions ostensibly not brought in a separate motion[16], yet at other

---

[13] "As we have previously stated, 'reasonable' attorney's fees in the context of Rule 11 'does not necessarily mean actual expenses and attorney's fees." *Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207, 211 (4th Cir. 1988).

[14] *See e.g.*, *Bolding v. Huntoon*, No. 2006-0335, 2007 WL 9619467, at *1 (N.H. Mar. 22, 2007); *A&B Lumber Co., LLC v. Hoppe*, No. 2006-0444, 2007 WL 9619472, at *2 (N.H. Oct. 11, 2007)

[15] See e.g., *Mount Saint Mary's Condo. Ass'n v. LeClerc*, No. 2016-0189, 2017 N.H. LEXIS 18 (Jan. 27, 2017); *Am. Express Travel v. Moskoff*, 148 N.H. 446, 453 (2002).

[16] *See e.g.*, *Indian Head National Bank v. George D. Corey & a.*, 129 N.H. 83 (1986); *State v. Rollins*, 129 N.H. 684 (1987); *A&B Lumber Co., LLC v. Hoppe*, No. 2006-0444, 2007 WL 9619472, at *2 (N.H. Oct. 11, 2007); *Bolding v. Huntoon*, No. 2006-0335, 2007 WL 9619467, at *1¶¶ (N.H. Mar. 22, 2007).

times it denies such requests without prejudice to a proper motion.[17] This shows, at a minimum, "arbitrary" enforcement occurring inside Rule 23's vague terminology, undefined procedural requirements, and unconstitutional vacuum of standard due process provisions.

### C.    First Amendment Right to Petition (Claim 3)

40.    Maravelias relies upon his argumentation showing why Claim 2 is not subject to dismissal, where Claim 3 is minimally distinguishable from Claim 2 for purposes of the Rule 12(b)(6) motion before the Court.

### D.    Eighth Amendment Excessive Fines Clause (Claim 4)

41.    The Complaint alleges the plain language of Rule 23 fails to require proportionality of the fine to the gravity of the offense and states two separate theories in support. Complaint at ¶69, ¶70. The lack of a restriction of the attorney's fees to be awarded to "reasonable" attorney's fees, the excess of attorney's fees which might be marginally "related" to an appeal in comparison with the smaller quantum of those incurred as a result of the "frivolous or bad faith conduct" to be properly punished, and the vague and/or overbroad reach of the term "bad faith" – unlike the term "frivolous" – support an inference of the Complaint's well-pleaded facts that Rule 23 is facially unconstitutional under the Excessive Fines Clause. These legal concepts figure heavily throughout Claims 1 and 2, having been addressed in further respective detail *supra*. The Eighth Amendment is not so frail as to allow the mere word "may" instead of "shall" to absolve Rule 23's otherwise over-expansive and unjust scheme for assessing punitive fines as suggested by its plain language.

---

[17] *See e.g.*, *Fowler v. Best Rate Real Estate*, LLC, No. 2017-0338, 2018 WL 2225116, at *5 (N.H. May 16, 2018); *Matter of Boughton*, No. 2018-0098, 2019 WL 1450299, at *1 (N.H. Mar. 1, 2019); *Branch Banking & Tr. Co. v. Duclair*, No. 2015-0545, 2016 WL 3748584, at *1 (N.H. May 2, 2016).

## **CONCLUSION**

42.     The foregoing Memorandum merely rebuts the Attorney General's Rule 12(b)(6)

arguments for dismissal and does not attempt to prove Rule 23 is unconstitutional in all the distinct

ways the Complaint notices. Plaintiff is entitled to an opportunity to do so at a later stage in this

lawsuit and will likely rely in part on certain claims and theories in his Complaint which go largely

unaddressed in the Attorney General's motion and Plaintiff's Memorandum in Opposition herein.

WHEREFORE, Plaintiff Paul Maravelias respectfully requests this Honorable Court grant the

relief requested in his accompanying Opposition to Attorney General's 3/6/20 Motion to Dismiss.


Dated: March 29th, 2020                    Respectfully submitted,

                                           PAUL J. MARAVELIAS,

                                           *pro se*


                                           /s/ Paul J. Maravelias_____

                                           **Paul J. Maravelias**
                                           34 Mockingbird Hill Rd
                                           Windham, NH 03087
                                           paul@paulmarv.com
                                           603-475-3305


## **CERTIFICATE OF SERVICE**

I, Paul Maravelias, certify that a timely provided copy of this document is being sent on
this date to counsel of record for the Defendants pursuant to the rules of this Court by
means of ECF filing.

/s/ Paul J. Maravelias_____            Dated: March 29th, 2020
**Paul J. Maravelias**